570 P.2d 259

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Maria LOPEZ, Defendant-Appellant.**

No. 11708.

Supreme Court of Idaho.

June 14, 1976.

On Rehearing Sept. 27, 1977.

William J. Tway, of Webb, Johnson, Tway, Redford & Greener, Boise, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

This case was initiated by a criminal complaint charging the defendant appellant Maria Lopez with the crime of prostitution. Lopez was tried before a jury in the magistrates division of the district court, and the jury returned a verdict of guilty of the crime of prostitution. Judgment was entered upon the verdict. Lopez appealed her judgment of conviction to the district court.

In a memorandum decision, the district court entered judgment affirming the judgment of conviction by the magistrate. Lopez then appealed from the district court to this Court.

Lopez challenges the judgment of conviction entered against her upon two grounds: (1) that I.C. § 18–5613,[1] the section of the criminal code under which she was convicted, is unconstitutionally vague; and (2) that the criminal complaint under which she was charged, prosecuted and convicted was unconstitutionally vague because it did not further define the terms used in the statute nor did it apprise her what conduct of hers was in violation of the statute. We believe that the latter challenge presents the issue of whether the complaint charged a criminal offense, i. e., whether it alleged conduct on her part with sufficient particularity so that (1) she would be informed what conduct of hers allegedly constituted an offense and (2) the complaint could be used to bar a second prosecution for the same conduct. We hold that the complaint in the case was defective because it did not charge and describe an offense, and that prosecution under the complaint was a violation of Lopez' due process rights under Art. 1, § 13, of the Idaho Constitution. Lopez' conviction must be reversed for those reasons. Thus, we find it unnecessary to consider whether I.C. § 18–5613 is unconstitutionally vague and express no opinion on that question.

*The Due Process Requirement of Particular Description of the Offense:*

The criminal complaint under which Maria Lopez was charged, tried and convicted accused her of violating I.C. § 18–5613 in the following manner:

"That the said defendant, MARIA LOPEZ, on or about the 25th day of October, 1973, in the County of Ada, State of Idaho, then and there being, did then and there knowingly, wilfully, intentionally and unlawfully engage in sexual activity as a business." (Clk.Tr., p. 3).

This Court held in *State v. McMahan*, 57 Idaho 240, 65 P.2d 156 (1937), that the due process clause of Art. 1, § 13, of the Idaho Constitution, gives a criminal defendant the right to be apprised of the specific facts of the commission of the crime for which he is accused so that he will know what conduct of his has been alleged to be criminal and will be able to prepare his defense. In that case, this Court considered an appeal from a judgment of conviction for manslaughter brought under an information containing the following allegation of criminal conduct:

" '[T]hat on or about . . . the 4th day of February 1936, at the County of Nez Perce in the State of Idaho, the aforesaid W. F. McMahan then and there being committed the crime of manslaughter who then and there did wilfully, unlawfully and feloniously kill one Stella Fleischman, a human being, contrary to the form of the statute in such case made and provided.' " 57 Idaho at 243, 65 P.2d at 156.

In the *McMahan* case this court overturned the judgment of conviction upon the ground that the information had failed to charge an offense, giving the following explanation for its decision:

"Our statutory provisions relative to indictments and informations were copied in 1864, by the Idaho territorial legislature, from the laws of California which were enacted in that state in 1851. During territorial days, and for a period of

1. "*18–5613. Prostitution.*—(1) Prostitution. A person is guilty of prostitution, a misdemeanor, if he or she: (a) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business; or (b) loiters in or within view of any public place for the purpose of being hired to engage in sexual activity.

" 'Sexual activity' includes homosexual and other deviate sexual relations. A 'house of prostitution' is any place where prostitution or promotion of prostitution is regularly carried on by one (1) person under the control, management or supervision of another. An 'inmate' is a person who engages in prostitution in or through the agency of a house of prostitution. 'Public place' means any place to which the public or any substantial group thereof has access."

many years of statehood, the plain mandates of these statutory provisions were obeyed by the courts, and it was the uniform practice in Idaho, in homicide cases, to state in indictments and informations the means by which, and the manner in which, the death charged was accomplished. In 1914 this court had under consideration, and decided, *State v. Smith*, 25 Idaho 541, 138 P. 1107, wherein Smith, who had been held to answer for manslaughter, was attempted to be charged in the following language:

" 'That the said defendant, Charles C. Smith, at the time and place aforesaid, did unlawfully and feloniously kill one Clara F. Foy, a human being; contrary to the form of the statute in such case made and provided.'

"Commenting on that information the court said:

" 'It will be observed from the foregoing provisions of the statute that the statute of this state requires an information or accusation against a person to be direct and certain as to the *offense charged,* that is, as to the particular name, character, or grade of crime that the party is accused with, and it also requires that it be direct and certain as to the "act or omission" which it is alleged constitutes the crime. In other words, to simply charge that a person committed murder or larceny merely charges the name of the offense. That alone is not sufficient. It is necessary to in some way inform the party accused as to how it is claimed he committed the murder, whether by shooting, by striking a blow, by drowning, poisoning, or in some other manner perpetrating the offense; or, if he committed larceny, what property he took. " '. . . [T]his case well illustrates the purpose and meaning of the statute. A defendant before being placed upon trial for his life or liberty is entitled to be apprised not only of the *name of the offense* with which he is charged, but, in general terms, of the *manner* in which he is charged with having committed the offense. The statute is plain and explicit in this respect.' " 57 Idaho at 245–247, 65 P.2d at 158. (Emphasis in original).

The Court then went on to explain that in *State v. Lundhigh,* 30 Idaho 365, 164 P. 690 (1917), it had abandoned the rule of *State v. Smith, supra,* and held that an information charging a violation of the statute by reciting the statutory language, but not alleging the specific circumstances of the commission of the crime was sufficient. The Court explained why it was abandoning the rule of *Lundhigh* and readhering to that of *Smith:*

"[I]t is the clear intent and purpose of our statute that the defendant shall be made acquainted with the nature of the charge against him by reading the information, and that it must contain 'a statement of the acts constituting the offense in ordinary and concise language.' This is a right which no one has discretion to deny.

.    .    .    .    .

"To put a man on trial without giving him, in the information, '*a statement of the acts constituting the offense* in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended,' and to let him know these facts, for the first time when his trial is in progress, is to deprive him of the protection the statute was designed to give him and deny him due process of law in violation of article 1, section 13 of the Constitution." 57 Idaho at 248–250, 65 P.2d at 159 (emphasis in original).

In *McMahan* this Court held that putting the defendant on trial without setting forth in the information the acts constituting the offense for which he was charged was a violation of the due process clause of Art. 1, § 13, of the Idaho Constitution. I.C. § 19–3901, which this Court made a rule of the Court in Rule 27 of the Rules of the Court for Magistrates Division of the District Court and District Court, provides that criminal proceedings in the magistrates division of the district court "must be commenced by complaint . . . setting forth the offense charged, with such partic-

ulars of time, place, person and property as to enable the defendant to understand distinctly the character of the offense complained of, and to answer the complaint." I.C. § 19–3901 imposes the same requirement of stating an offense as do I.C. §§ 19–1409, –1411, the sections involving indictments which the Court was interpreting in *McMahan. State v. Henry*, 83 Idaho 167, 359 P.2d 514 (1961). Thus, under the authority of *McMahan,* we hold that it is a violation of the due process clause of Art. 1, § 13, of the Idaho Constitution to put a defendant on trial in the magistrates division of the district court without first apprising her in the complaint of the offense charged by reference to "particulars of time, place, person and property as to enable the defendant to understand distinctly the character of the offense complained of, . . ." Because the complaint under which Lopez was prosecuted did not apprise her of the specific conduct which the state alleged to be criminal, she was deprived of due process of law when she was tried under that complaint. *See also State v. Groseclose,* 67 Idaho 71, 171 P.2d 863 (1946).

Also, the failure of the complaint in this case to charge the offense "with such particulars of time, place, person and property," as required by I.C. § 19–3901 poses a double jeopardy issue because the accused would have no way of knowing what transaction was involved in the conviction. As stated in *State v. Grady,* 89 Idaho 204, 404 P.2d 347 (1965):

> "Correlative with these statutory requirements for an indictment and with the tests of its sufficiency, there is yet another test as to its sufficiency. If the information fails to describe the offense with such particularity so as to serve as a shield in the event of a second prosecution for the same offense, such information is insufficient. . . .
>
> "In *State v. Lottridge* [29 Idaho 53, 155 P. 487 (1916)], this court stated:
>
> "'This court in the case of *State v. O'Neil,* 24 Idaho 582, 135 P. 60 [(1913)], discussing the sufficiency of the indictment and quoting from the case of *Cochran v. United States,* 157 U.S. 286, 15

S.Ct. 628, 39 L.Ed. 704 [(1895)], said: "But the true test is . . . whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, *in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.*" . . .'" 89 Idaho at 209, 404 P.2d at 350 (Emphasis added).

*See also State v. Doolittle,* 58 Idaho 1, 68 P.2d 904 (1937). The complaint under which Maria Lopez was prosecuted did not describe the crime for which she was accused with sufficient particularity to state an offense or to bar a second prosecution and conviction for the same offense. It was defective for both of these reasons.

### Consideration of the Complaint Upon Appeal:

Idaho Criminal Rule 12 provides:

"RULE 12. PLEADINGS AND MOTIONS BEFORE TRIAL—DEFENSES AND OBJECTIONS.— . . .

"(b) PRETRIAL MOTIONS. Any defense, objection or request which is capable of determination without trial of the general issue may be raised before the trial by motion. The following must be raised prior to trial:

> . . . . .

"(2) defenses and objections based on defects in the complaint, indictment or information *(other than it fails* to show jurisdiction of the court or *to charge an offense which objection shall be noticed by the court and [at] any time during the pendency of the proceedings)* ; . . ." (Emphasis added).

I.C.R. 12(b)(2) plainly states that the defense that the complaint does not charge an offense is not a defense which must be raised by motion before trial; on the contrary, even if this defense is not raised, the rule provides that it shall be noticed by the court at any time during the pendency of the proceedings. In this respect the de-

fense is treated in the same manner as a jurisdictional defense. We hold, therefore, that like a jurisdictional defense, which may be raised at any stage of the proceedings, even by an appellate court on its own initiative, *State v. Mowrey,* 91 Idaho 693, 429 P.2d 425 (1967), the defense of the failure to charge an offense may also be raised at any stage of the proceedings, whether the proceedings are before the trial court or before an appellate court, and may be raised either by the parties or the court upon its own initiative. *See Carlson v. United States,* 296 F.2d 909 (9th Cir. 1961); 1 Wright, Federal Practice & Procedure, § 193, pp. 403–404 (1969), which considered a similar provision of the federal criminal rules. Accordingly, we hold that the complaint under which the accused was convicted did not state an offense and that the conviction of the defendant Lopez under this complaint was a violation of her rights under Art. 1, § 13, of the Idaho Constitution.

Judgment of conviction reversed.

DONALDSON, J., concurs.

McQUADE, former Chief Justice, concurred in judgment of reversal of conviction before resigning from the court effective March 17, 1976, but did not participate in the opinion.

SHEPARD, Justice (concurring specially).

For reasons stated below I concur in the result obtained by the opinion of Justice Bakes but disagree with the reasoning. Specifically, I disagree with its reliance upon the defectiveness of the complaint. This issue was neither considered by the trial court nor directly addressed in the briefs or arguments provided on appeal. Further, the opinion will invite a new flood of collateral attacks to previous convictions, a result I regard as ill-considered, unwarranted and unnecessary. The question which is, in my opinion, properly before this Court and which provides an adequate and compelling basis for reversal is the "unconstitutional uncertainty" of I.C. § 18–5613. It is on this ground that I join in reversing the judgment of conviction.

The record here reveals little more than that the appellant, Maria Lopez, was charged, tried and convicted of violating I.C. § 18–5613 in that she did "knowingly, wilfully, intentionally and unlawfully engage in sexual activity as a business." The subject statute states in full:

"*Prostitution.*—(1) Prostitution. A person is guilty of prostitution, a misdemeanor, if he or she: (a) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business; or (b) loiters in or within view of any public place for the purpose of being hired to engage in sexual activity.

"'Sexual activity' includes homosexual and other deviate sexual relations. A 'house of prostitution' is any place where prostitution or promotion of prostitution is regularly carried on by one (1) person under the control, management or supervision of another. An 'inmate' is a person who engages in prostitution in or through the agency of a house of prostitution. 'Public place' means any place to which the public or any substantial group thereof has access."

It is appellant's contention that subsection (1)(a) of this provision and in particular the words "sexual activity as a business" is unenforceable as unconstitutionally vague. I agree.

The concept of void-for-vagueness arose from a common law practice of refusing to enforce legislation deemed too indefinite to be applied. See, Amsterdam, "The Void-for-Vagueness Doctrine in the Supreme Court," 109 U.Pa.L.R. 67 (1960). It has evolved to a protection generally regarded as embodied in a Due Process Clause and prohibits holding a person "criminally responsible for conduct which he could not reasonably understand to be proscribed." *U. S. v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). In addition to this notion of "fair notice or warning" the doctrine is said to require reasonably clear guidelines to prevent "arbitrary and discriminating enforcement" and to prescribe a precise standard for the adjudication of

guilt. *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). See also, Amsterdam, *supra,* at 76. The principle consistently followed is that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *State v. Pigge,* 79 Idaho 529, 532, 322 P.2d 703, 705 (1957); *State v. Thomas,* 94 Idaho 592, 594, 494 P.2d 1036 (1972).

Typically in determining the sufficiency of a statute it must be examined in light of the conduct with which an appellant is charged. *U. S. v. National Dairy Prod. Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *U. S. v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *State v. Carringer,* 95 Idaho 929, 523 P.2d 532 (1974). *Compare Thornhill v. Alabama,* 310 U.S. 88, 98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Here there is only the conclusory averment that appellant was engaging in "sexual activity as a business" without further explanation. Accordingly, it is from the plain language of the statute that we must judge the precision of its terms.

I.C. § 18–5613 is the result of successive amendments to the short-lived Penal and Correctional Code of 1971, Ch. 143, § 18–2102 [1971] Idaho Sess. Laws 716–17. That law included former I.C. § 18–2102[1] which

1. "PROSTITUTION AND RELATED OFFENSES.—(1) Prostitution. A person is guilty of prostitution, a petty misdemeanor, if he or she:
   (a) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business; or
   (b) loiters in or within view of any public place for the purpose of being hired to engage in sexual activity.
   'Sexual activity' includes homosexual and other deviate sexual relations. A 'house of prostitution' is any place where prostitution or promotion of prostitution is regularly carried on by one (1) person under the control, management or supervision of another. An 'inmate' is a person who engages in prostitution in or through the agency of a house of prostitution. 'Public place' means any place to which the public or any substantial group thereof has access.
   (2) Promoting prostitution. A person who knowingly promotes prostitution of another commits a misdemeanor or felony as provided in subsection (3) of this section. The following acts shall constitute promoting prostitution:
   (a) owning, controlling, managing, supervising or otherwise keeping, alone or in association with others, a house of prostitution or a prostitution business; or
   (b) procuring an inmate for a house of prostitution or a place in a house of prostitution for one who would be an inmate; or
   (c) encouraging, inducing, or otherwise purposely causing another to become or remain a prostitute; or
   (d) soliciting a person to patronize a prostitute; or
   (e) procuring a prostitute for a patron; or
   (f) transporting a person into or within this state with purpose to promote that person's engaging in prostitution, or procuring or paying for transportation with that purpose; or
   (g) leasing or otherwise permitting a place controlled by the actor, alone or in association with others, to be regularly used for prostitution or the promotion of prostitution, or failure to make reasonable effort to abate such use by ejecting the tenant, notifying law enforcement authorities, or other legally available means; or
   (h) soliciting, receiving, or agreeing to receive any benefit for doing or agreeing to do anything forbidden by this subsection.
   (3) Grading of offenses under subsection (2). An offense under subsection (2) of this section constitutes a felony of the third degree, if:
   (a) the offense falls within subsection (2)(a), (b), or (c) of this section; or
   (b) the actor compels another to engage in or promote prostitution; or
   (c) the actor promotes prostitution of a child under sixteen (16), whether or not he is aware of the child's age; or
   (d) the actor promotes prostitution of his wife, child, ward, or any person for whose care, protection or support he is responsible.
   Otherwise the offense is a misdemeanor.
   (4) Presumption from living off prostitutes. A person, other than the prostitute or the prostitute's minor child or other legal dependent incapable of self-support, who is supported in whole or substantial part by the proceeds of

in addition to the language found in the present statute contained subsections further describing prostitution-related offenses. Upon the repeal of the Penal and Correctional Code, I.C. § 18–2102(1) was re-enacted in 1972. Ch. 381, § 19 [1972] Idaho Sess. Laws 1110. However, the re-enactment was only partial in that it omitted the words " * * * prostitution, a misdemeanor, if he or she:" which gave the law its activating language. The legislature added this necessary language in 1973. Ch. 15, § 1 [1973] Idaho Sess.Laws 31.

The re-enactment in 1972 reinstated only subsection 1 of the original law, deleting the five other subsections addressing related offenses. Whether this exclusion was intentional or inadvertent can only be surmised, but the inclusion of the parenthesized number one "(1)" for a single section act suggests the omission may have been in error. At any rate, we have only this remaining subsection from which to glean the meaning of the phrase "sexual activity as a business."

Clearly the statute is directed toward prohibition and making criminal "prostitution." I deem that among English speaking people the term "prostitution" has a meaning which is historic and may be said to be well understood by persons of common intellect. Such meaning, although not uniformly or identically appreciated by all, provides sufficient notice of what conduct is forbidden so that the term requires no definition. If any definition there need be, I would suggest it could be simply stated as "the giving of human bodily services to another for the purpose of carnal knowledge, coitus or other forms of heterosexual or homosexual gratification for compensation." Such definition would comport with dictionary descriptions. See, Webster's New International Dictionary, Unabridged (2d ed. 1957).

In the American Law Institute's tentative drafts of the Model Penal Code, from which Idaho took the language of the 1971 statute, there was language attempting to define "sexual activity" which is pertinent to the issue here. Section 207.12 of Tentative Draft No. 9 (May 9, 1958) contained the following subsection:

"(6) *Definitions.* Sexual activity means carnal knowledge, deviate sexual intercourse, and sexual contact, as these terms are defined in Sections 207.4(6), 207.5(6) and 207.6(4), or any lewd act defined in Section 207.9, whether or not it is openly done as required in that Section * * *" (at 169).

In addition the comments of the A.L.I. Reporter, as contained in the Ninth Tentative Draft, stated as follows:

"2. *Sexual Activity.* This term as defined in Subsection (6) covers not only sexual intercourse but also other lewd acts. Some existing laws confine themselves to offering or receiving the body for 'intercourse.' Since commercial prostitution offers and even features abnormal forms of sexual gratification, it is important to include this. Male as well as female prostitution is covered. The Section extends to sexual display not involving contact with the customers, for example, catering to the perverse desire to observe others in sexual activity ('voyeurism'), since this would fall within the definition of 'lewd act' in Section 207.9.

"3. *Hire; Promiscuity Without Hire Not Criminal.* * * *

A case might be made for limiting the offense of prostitution to 'promiscuous' sexual activity for hire. Requiring promiscuity as well as hire would, for example, bar prosecution of a mistress who is supported by her lover. Such situations fall

---

prostitution is presumed to be knowingly promoting prostitution in violation of subsection (2) of this section.
(5) Patronizing prostitutes. A person commits a violation if he hires a prostitute to engage in sexual activity with him, or if he enters or remains in a house of prostitution for the purpose of engaging in sexual activity.

(6) Evidence. On the issue of whether a place is a house of prostitution, the following shall be admissible evidence: its general repute; the repute of the persons who reside in or frequent the place; the frequency, timing and duration of visits by non-residents. Testimony of a person against his spouse shall be admissible to prove offenses under this section."

somewhat outside the target evils of our Section, but the 'hire' requirement itself is probably a sufficient safeguard, since the lover's financial contributions in these relationships are more likely to be interpreted as gifts out of general affection rather than 'hire' for sexual activity * * * " (at 174–75).

These descriptions were consistent with the "basic policy" behind the Institute's proposed code of including within the definition of prostitution "homosexual and other deviate sexual behavior," and confining the criminal sanctions to "sexual activity for hire." See A.L.I., Model Penal Code, Tentative Draft No. 9, 174 (May 9, 1958).

Nevertheless, in the Final Draft of the Code the subsection defining sexual activity was dropped without explanation. See A.L.I., Model Penal Code, Final Draft, § 251.2, at 233–35 (May 4, 1962). It was this modified version that was adopted in toto in Idaho's 1971 Penal and Correctional Code. The basic policy of that tentative draft, however, remained and in my opinion is the cause of the ambiguity in the present law.

In my judgment the instant statute suffers from attempted legislative overkill. I believe that it successfully defines "a house of prostitution" and an "inmate" thereof. It also successfully defines prostitution as "[public loitering] for the purpose of being hired to engage in sexual activity." Unfortunately, I believe the phrase "otherwise engag[ing] in sexual activity as a business" results in vagueness. Certainly it could be contended that a variety of forms of otherwise legitimate pursuits are embraced in that legislative proscription. It is arguable that conducting a business involving the breeding of any form of animal life or the production of seminal fluid for medical purposes such as analysis or uterine implant could fall within the proscription of the statute.

If society through its legislative process continues to demand the prohibition of and punishment for the sale of the human body for sexual gratification, then the judicial branch of government should uphold the right of society to proscribe such conduct. However, if in so doing it is necessary for the legislature to define the term "prostitution," it should be accomplished through the use of clear, unambiguous language which provides notice of proscribed conduct. The lack of such clear proscription of particular conduct is the vice in the instant statute.

McFADDEN, C. J., concurs.

## ON REHEARING

SHEPARD, Justice.

The State filed a petition for rehearing which was granted and argument was heard thereon.

■ It is to be noted at the outset that the complaint is poorly framed in that no specific act was stated as having been performed by the accused, but rather only the statutory language was parroted. We do not, however, reach the issue of the effectiveness of the complaint since we hold that the statute is void-for-vagueness and violates appellant's constitutional right to due process of law.

It is the essence of the State's position that prostitution is as old as man and everyone knows what it is. Inherent therein is the assumption that Lopez performed some act which everyone knows or should know constitutes the crime of prostitution. The record available to the Court consists only of documents indicating that Lopez was charged with a crime by usage of the statutory language and that she has been convicted following a verdict of guilty by the jury. The record contains no evidence or even allegations which in any manner indicates what specific act she performed. Contrary to the position of the State, State v. Carringer, 95 Idaho 929, 523 P.2d 532 (1974), and the cases cited therein, are clearly distinguishable from the case at bar. As stated by the Court in Carringer:

" * * * the words of the questioned statute should not be evaluated in the abstract, but should be considered with reference to the particular conduct of the defendant." (Emphasis supplied.)

In *Carringer,* unlike the case at bar, the ugly facts of the specific conduct of the defendant were before the Court and it was on that basis that the Court in *Carringer* stated:

"It is beyond doubt that the defendant's acts fall squarely within the very core of I.C. § 18–6605 as uniformly construed for 58 years."

As previously indicated, we have no knowledge of the acts allegedly performed by Lopez.

Prior to 1971 the Model Penal Code of the American Law Institute contained language attempting to define "sexual activity." Section 207–12 of Tentative Draft No. 9 (May 9, 1958) contained the following subsection:

"(6) *Definitions.* Sexual activity means carnal knowledge, deviate sexual intercourse, and sexual contact, as these terms are defined in Sections 207.4(6), 207.5(6) and 207.6(4), or any lewd act defined in Section 207.9, whether or not it is openly done as required in that Section * * *." (at 169)

In addition, the comments of the A.L.I. Reporter as contained in the Ninth Tentative Draft stated as follows:

"2. *Sexual Activity.* This term as defined in Subsection (6) covers not only sexual intercourse but also other lewd acts. Some existing laws confine themselves to offering or receiving the body for 'intercourse.' Since commercial prostitution offers and even features abnormal forms of sexual gratification, it is important to include this. Male as well as female prostitution is covered. The Section extends to sexual display not involving contact with the customers, for example, catering to the perverse desire to observe others in sexual activity ('voyeurism'), since this would fall within the definition of 'lewd act' in Section 207.9.

"3. *Hire; Promiscuity Without Hire Not Criminal.* * * *

A case might be made for limiting the offense of prostitution to 'promiscuous' sexual activity for hire. Requiring promiscuity as well as hire would, for example, bar prosecution of a mistress who is supported by her lover. Such situations fall somewhat outside the target evils of our Section, but the 'hire' requirement itself is probably a sufficient safeguard, since the lover's financial contributions in these relationships are more likely to be interpreted as gifts out of general affection rather than 'hire' for sexual activity * * *." (at 174–75)

In the final draft of the Code, the subsection defining sexual activity was dropped without explanation. *See,* A.L.I., Model Code, Final Draft, § 251.2 at 233–35 (May 4, 1962). It was that modified version that was adopted in Idaho's 1971 Penal and Correctional Code. Ch. 143, Idaho Sess. Laws 1971. That Penal and Correctional Code of 1971 was shortlived and amended in 1972, Ch. 381, § 19, Idaho Sess. Laws 1972. That amendment of 1972 reinstated only subsection 1 of the original act deleting the other five subsections. That such elimination of the remaining subsections was probably legislative error is demonstrated by the inclusion of the parenthesized number "(1)" for the single section act under consideration here.

Clearly, the intent of the statute in question here was to make the practice of prostitution criminal. Among English speaking people the term prostitution has a meaning which is historic and may be said to be well understood by persons of common intellect. At common law, prostitution was generally understood to apply only as against women and usually only in connection with sexual intercourse for hire. 63 Am.Jur.2d, Prostitution § 1; *State v. Clark,* 78 Iowa 492, 43 N.W. 273 (1889). Therefore if our legislature had not attempted to define prostitution the position of the State might be sustainable. However, contrary to the position of the State, there is no longer in Idaho a traditional definition of prostitution since I.C. § 18–5613 clearly reflects a legislative attempt to redefine prostitution more expansively with application to male as well as female and to also expand the traditional definition to include a proscription against homosexual and other deviate conduct.

Although the State argues the difficulty if not impossibility of drafting legislation in this area which will accomplish the legislative purpose without infringing upon the void-for-vagueness doctrine, that argument is clearly rebutted by the action of the 1977 Idaho legislature in its enactment of S.B. 1196. That legislation amends I.C. § 18–5613 to provide as follows:

"*Prostitution.* (1) A person is guilty of prostitution when he or she: (a) *engages in or offers or agrees to engage in sexual conduct, or sexual contact with another person in return for a fee*; or (b) is an inmate of a house of prostitution; or (c) loiters in or within view of any public place for the purpose of being hired to engage in sexual conduct or sexual contact.

(2) Prostitution is a misdemeanor, provided, however, that on a third or subsequent conviction for prostitution, it shall be a felony.

(3) Definitions:

(a) *'Sexual conduct' means sexual intercourse or deviate sexual intercourse.*

(b) *'Sexual contact' means any touching of the sexual organs or other intimate parts of a person not married to the actor for the purpose of arousing or gratifying the sexual desire of either party.* * * * *"
(Emphasis added.)

▆▆▆▆ The concept of void-for-vagueness arose from a common law practice of refusing to enforce legislation deemed too indefinite to be applied. *See,* Amsterdam, "The Void-for-Vagueness Doctrine in the Supreme Court," 109 U.Pa.L.Rev. 67 (1960). It has evolved to a protection generally regarded as embodied in a Due Process Clause and prohibits holding a person "criminally responsible for conduct which he could not reasonably understand to be proscribed." *U. S. v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). In addition to this notion of "fair notice or warning" the doctrine is said to require reasonably clear guidelines to prevent "arbitrary and discriminating enforcement" and to prescribe a precise standard for the

adjudication of guilt. *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). *See also,* Amsterdam, *supra,* at 76. The principle consistently followed is that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *State v. Pigge,* 79 Idaho 529, 532, 322 P.2d 703, 705 (1957); *State v. Thomas,* 94 Idaho 592, 594, 494 P.2d 1036 (1972).

In the instant statute as it existed at the time in question here, the legislature sought to define the term "prostitution" but failed to use clear and unambiguous language to provide notice of the proscribed conduct. The statute as amended presently proscribes prostitution which is defined as engaging or offering to engage in defined sexual conduct or defined sexual contact with another person in return for a fee.

Conviction is reversed.

McFADDEN, C. J., and DONALDSON, J., concur.

BAKES, Justice, concurring specially:

I concur in the decision of the Court reversing this conviction. In my view, the complaint does not charge an offense, *see State v. Doolittle,* 58 Idaho 1, 68 P.2d 904 (1937), and *State v. Grady,* 89 Idaho 204, 404 P.2d 347 (1965), and therefore under Rule 12(b)(2) of the Idaho Rules of Criminal Procedure, when that defect is noticed "at any time during the pendency of the proceedings" the complaint must be dismissed. The judgment of the district court should be reversed and the cause remanded with directions to dismiss the complaint for failure of the complaint to charge an offense.

BISTLINE, Justice, dissenting.

In my judgment the Court's majority opinion runs directly contrary to the pronouncements of the United States Supreme Court and to the earlier decisions of this Court. It is appropriate therefore that I briefly delineate the manner in which I believe the Court has strayed.

## I.

Lopez appealed to this Court on the narrow and sole ground that the statute under which she was tried and convicted was *facially vague* and in violation of her rights under the due process clause of the Fourteenth Amendment to the United States Constitution. Her assignment of error reads that the statute criminalizing prostitution "is unconstitutionally vague *on its face* in that it forbids engaging in 'sexual activity as a business' without defining the terms therein so that a person of common understanding could know what is forbidden." More precisely still, her argument is that:

"In this case the Defendant is charged with engaging in 'sexual activity as a business.' What the terms 'sexual activity' and 'business' mean is not defined by the statute. The vagueness of these terms results because of the *multiplicity of possible meanings,* some of which would apply to conduct that is constitutionally protected." (Emphasis added.)

Thus viewed, no complaint is made by Lopez that "prostitution" is not defined, but that the defining terms are not defined. Her conclusion is reached not by taking the entire phrase "otherwise engages in sexual activity as a business" in its context within the Idaho statute criminalizing prostitution, but by dissecting the phrase into the words "sexual," "activity" and "business" and then turning to the dictionary definition of each.[1] The results of such an approach are predictable for, as the mathematician Alfred North Whitehead once observed, one must murder to dissect.

I am surprised that Lopez is able to persuade the Court to piece together one of the dictionary definitions of "sexual," one of "activity," and another of "business" and thereby *imagine* a *hypothetical* situation where an innocent person might be prosecuted under the statute. Such an approach was totally and firmly rejected by the United States Supreme Court in *American Communications Association v. Douds,* 339 U.S. 382, 412, 70 S.Ct. 674, 690, 94 L.Ed. 925, 951 (1950):

"The argument as to vagueness stresses the breadth of such terms as 'affiliated,' 'supports' and 'illegal or unconstitutional methods.' *There is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question.* The applicable standard, however, is not one of wholly consistent academic definition of abstract terms. It is, rather, the practical criterion of fair notice to those to whom the statute is directed. *The particular context is all important.*" (Emphasis added.) *American Communications Ass'n v. Douds,* 339 U.S. at 412, 70 S.Ct. at 691.

Let us rather examine the *all-important particular context* within which the supposedly offending phraseology is found. I.C. § 18–5613, effective at the time Lopez was tried and convicted, reads:

"Prostitution.—(1) Prostitution. A person is guilty of prostitution, a misdemeanor, if he or she: (a) is an inmate of a house of prostitution *or otherwise engages in sexual activity as a business* ; or

---

1. Sexual. "Of, relating to, or associated with sex or the sexes . . . having or involving sex."

 Activity. "The quality or state of being active . . . vigorous or energetic action . . . natural or normal function: as . . . a process that an organism carries on or participates in by virtue of being alive . . . any similar process actually or potentially involving mental functions . . . an active force . . . a pursuit in which a person is active . . . a form of organized, supervised, often extracurricular recreation . . . an organizational unit for performing a specific function."

 Business. "[B]usies, engages time, labor as a principal concern or interest; a constant employment; regular occupation; work; any particular occupation or employment habitually engaged in for livelihood or gain."

(b) loiters in or within view of any public place for the purpose of being hired to engage in sexual activity." (Emphasis supplied.)

In short, section (1)(a) of the statute recognizes that prostitution may be a "house" arrangement, but that a person may engage in sexual activity as a business otherwise than in a house; section (1)(b) further criminalizes the conduct of those who loiter in, or within view of, any public place for the purpose of being hired to engage in sex. In my view it is inconceivable that this language presents any genuine problem. The rule of law is simply "that 'men of common intelligence' not be forced to guess at the meaning of the criminal law." *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974). The majority agrees that,

> "Among English speaking people the term prostitution has a meaning which is historic and may be said to be well understood by persons of common intellect."[2]

The statute here did nothing other than simply criminalize prostitution; it does so regardless of whether the offender is a house inmate or *otherwise* follows the trade. The precise rule of construction governing the interpretation of the phrase "otherwise engages in sexual activity as a business" is that of *ejusdem generis*:

> "We recognize and have often invoked the rule of construction that, where general words of a statute follow an enumeration of persons or things, such general words will be construed as meaning persons or things of *like or similar* class or

character to those specially enumerated; usually designated the 'ejusdem generis' rule." *Pepple v. Headrick,* 64 Idaho 132, 141, 128 P.2d 757, 760 (1942).

Or, as Judge Hagan so well expressed it: "The word 'prostitute' is self-defining and needs no official definition as part of the statute. This is not disputed by the appellant. It is the phrase 'sexual activity as a business' which is specifically alleged as vague and indefinite. The key word, in my opinion, is the word 'otherwise.' From the interpretations of this word in statutory construction as contained in 30a Words and Phrases 228, et seq., it would appear the word 'otherwise' means under circumstances other than the basic proscription, but also refers to acts of the same general nature, or under similar circumstances as the general category of proscribed conduct. This, then, would mean the statute is confined to proscribing sexual activity conducted as a business under more or less the same circumstances as prostitution, or of the same general nature as prostitution. Under this interpretation, the statute would not be vague and would not reach those classes of activity which appellant has cited in her brief. The gynecologist, the doctor who performs vasectomies, and counselors in the performance of their usual duties would not be engaging in sexual activity for hire in the same general category as prostitution. The statute in effect creates two categories, in Subsection (a), of prostitutes. The first category includes those who are inmates of a house of prostitution and the second are prostitutes, or

---

**2.** Pursuant to legislative authorization, one hundred years ago the Boise City Council on March 12, 1877, passed what is apparently the first enactment in Idaho prohibiting prostitution. The council declared: "That it shall not be lawful for any person to keep a bawdy-house, house of ill-fame, or house kept for the purposes of prostitution, within the corporate limits of Boise City." Ordinance No. 31, Section 1. Prostitution was thus recognized, but criminalizing it was, in the one instance, committed to the good judgment of the local au-

thority in Boise City alone. Ten years later the law became:

> "Every person who keeps any disorderly house, or any house for the purpose of assignation or prostitution, . . . is guilty of a misdemeanor." Revised Statutes of Idaho, 1887, § 6842.

Again, it was not considered necessary that prostitution be defined. In 1890, a conviction under this Act was obtained, and affirmed on appeal. *Territory v. Bowen,* 2 Idaho 640, 23 P. 82 (1890).

those who engage in similar conduct, who are not inmates of a house of prostitution. With this interpretation, I find the statute sufficiently definitive of the conduct which it proscribes and not unconstitutionally vague."

The phrase "otherwise engages in sexual activity as a business" thus evidences a legislative intent to outlaw prostitution in whatever form and wherever found. The phrase "sexual activity" was used in addition to the word "prostitution" because, as the statute explains, and as the majority itself admits, other forms of sexual behavior than heterosexual intercourse were also intended to be covered. The phrase "as a business" is added because, as the United States Supreme Court has long maintained, it is "sexual relations *for hire*" rather than promiscuity without hire which is proscribed. *Cleveland v. U. S.*, 329 U.S. 14, 17, 67 S.Ct. 13, 91 L.Ed. 12 (1946).

Summing up, the language of the 1972 statute is extremely clear.[3] I am unable to follow the logic of the majority: (a) that had the Idaho legislature left the word "prostitution" undefined, the statute would have passed constitutional muster; (b) that a fatal flaw occurred in 1972 when the legislature tried to expand I.C. § 18–5613 to include males, homosexuals and sexual deviates, and (c) that this attempted expansion vitiates the entire prostitution statute and renders it unconstitutionally vague because the *new* language fails "in clear and unambiguous language to provide notice of the proscribed conduct" to those who were the object of the *old* proscriptions. Appropriate to such an exercise in statutory construction is the statement of Mr. Justice Harlan:

"... almost any word or phrase may be rendered vague and ambiguous

by dissection with a semantic scalpel. I do not, however, consider it a provident use of the time of this court to coach what amounts to little more than verbal calisthenics. [Citation omitted.] This kind of semantic inquiry, however interesting, should not occupy the time of federal courts unless fundamental rights turn on the outcome." *Cole v. Richardson,* 397 U.S. 238, 240, 90 S.Ct. 1099, 1101, 25 L.Ed.2d 275, 276 (1970).

With the Court unwilling to heed the holdings of the United States Supreme Court in matters involving Fourteenth Amendment challenges to state statutes on grounds of alleged facial vagueness, I submit that the inmates of the state penitentiary will soon be buying dictionaries and sharpening their semantic scalpels.

## II.

The State relied on *Idaho* authority as well as that from the United States Supreme Court in its argument before this Court. *State v. Carringer,* 95 Idaho 929, 523 P.2d 532 (1974), was handed down June 20, 1974—which was about the time the *Lopez* case was on appeal before Judge Hagan. In *Carringer,* this Court upheld the constitutionality of I.C. § 18–6605—which proscribes "the *infamous crime against nature*"—against a void-for-vagueness challenge. The standard applied was that enunciated by the United States Supreme Court:

" 'Void for vagueness' simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." 95 Idaho at 930, 523 P.2d at 533 (quoting *United States v. Nat'l Dairy*

---

**3.** The majority placed great reliance on the passage of an amendment to I.C. § 18–5613 by the 1977 legislature as proof of the vagueness of the statute under which Lopez was charged and convicted. The 1977 legislature is said to have achieved admirable clarification by striking out "sexual activity as a business" and replacing it with "sexual conduct, or sexual contact with another person in return for a fee."

First, I point out that the legislature should not be presumed as having admitted any error in draftsmanship in the statute as it read in 1974. I rather surmise that, faced with the opinions which issued from this Court in June of 1976, the legislature decided it was easier for it to amend than for the Attorney General to continue to argue. Further, I fail to see how the new language offers precision in any particulars which the majority today finds vague.

594

*Products Corp.,* 372 U.S. 29, 32, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963).[4]

Further on in *Carringer,* the Court, again citing as its authority *United States v. National Dairy Products, supra,* made a statement which assumes critical significance in the present case:

"Common to most if not all vagueness cases is the principle that the words of the questioned statute should not be evaluated in the abstract but should be considered *with reference to the particular conduct of the defendants.*" (Emphasis added.) 95 Idaho at 930, 523 P.2d at 533.

What the United States Supreme Court actually said in that case was that,

"In determining the sufficiency of the notice, a statute must of necessity be examined *in the light of the conduct with which a defendant is charged.*" (My emphasis.) *United States v. Nat'l Dairy Products,* 372 U.S. at 33, 83 S.Ct. at 598.[5]

The Court today, without observing that it misstated what was actually said in the *National Dairy* case, now relies upon that misstatement to distinguish *Carringer* from *Lopez* : "In *Carringer,* unlike the case at bar, the ugly facts of the specific conduct of the defendants was before the Court," whereas here we are without "knowledge of the acts allegedly performed by Lopez."

The proper procedure in challenging the constitutionality of a statute is to raise the objection "at the earliest possible moment consistent with good pleading and orderly procedure," *State v. Pollock,* 80 Idaho 256, 260, 327 P.2d 781, 783 (1958), "otherwise it will be deemed to have been waived." *Brady v. Place,* 41 Idaho 747, 752, 242 P. 314, 316 (1925). Obviously, a trial court faced with a constitutional challenge cannot avoid the issue and announce, as the majority, in essence, does today, that, "The court will reserve its ruling until it sees the evidence and finds out just what the specific conduct is in this case." This issue is required to be raised early, and it must be passed on when made. The constitutionality of the challenged statute must be determined neither in the abstract, nor in hindsight after accumulating a full record, but in light of the conduct with which the defendant *is charged.* So said the United States Supreme Court in the case which this Court relied upon in *Carringer,* and I take it that such is the ultimate word in such Fourteenth Amendment challenges as this one.

Applying pool hall reverse english to the approach advocated by the majority, it would seem that counsel who took the appeal in *Carringer* were guilty of malpractice in bringing to this Court a complete record. Had counsel not brought to this Court a record of the "ugly facts of the specific conduct of the defendants," then, under the rationale which the Court utilizes today, Carringer presumably would have prevailed on his appeal. The principle the majority today espouses can only result in our seeing a great number of appeals or post-conviction proceedings challenging the constitutionality of criminal statutes, but leaving the record back home.

I question also in the majority opinion the statement that, as to the State's position, and inferentially as to the decision of Judge

4. In *United States v. National Dairy Products Corp., supra,* the Court specifically noted that: ".   .   .   the approach to 'vagueness' governing a case like this is different from that followed in cases arising under the First Amendment. There we are concerned with the vagueness of the statute 'on its face' because such vagueness may in itself deter constitutionally protected and socially desirable conduct." 372 U.S. at 36, 83 S.Ct. at 599. Perhaps this more stringent standard of review is that employed by the majority in reaching

today's decision. If so, it is done despite the fact that Ms. Lopez makes no allegation that the statute in question here violates her First Amendment rights or that she was engaged in "constitutionally protected and socially desirable conduct."

5. The 1972 statute surely served to advise Idaho's prostitutes that their profession had been placed outside the law, hence "proscribed."

Hagan as well, that "[i]nherent therein is the *assumption* that Lopez performed some act *which everyone knows or should know* constitutes the crime of prostitution." This remark suggests that the jury convicted Lopez without any evidence being produced as to what activity of hers led to her prosecution. Surely nothing was so assumed by the jury, by the trial magistrate, by Judge Hagan, or by the Office of the Attorney General. Lopez, on her succession of appeals, chose to leave the evidentiary record behind. Counsel for Lopez has never contended or suggested on this appeal that the evidence did not sustain the jury's verdict that she was engaged in prostitution. He confined his attack to a challenge of facial vagueness—not vagueness as applied.

This Court, on an appeal, should not indulge in the presumption that there was error or irregularity in proceedings below. Just the contrary. The well-known rule is just the opposite, that all presumptions are in favor of upholding the proceedings below, and that the burden of showing error therein is on appellant. Here the Court violates every known rule of appellate review by basing its decision on the innuendo that the State is somehow at fault for not bringing up a record to show the precise details of the conduct which led to Lopez' conviction.

The statutes and rules in effect at all times relevant to this appeal were authoritatively construed to the contrary in *Dawson v. Eldredge*, 89 Idaho 402, 405 P.2d 754 (1965). There it was held that both the Appellate Rules of the Supreme Court and the pertinent statutes "require *an appellant* to perfect his record for consideration by this court." 89 Idaho at 405, 405 P.2d at 756. There it was held further that, in the absence of an adequate record on appeal, regularity of proceedings below would be presumed, and that the missing documents would not inure to the benefit of the appellant who lost below and who brought up an inadequate record on appeal:

"The transcript not containing all the testimony and other evidence, we must necessarily presume that the evidence justifies the decision and that the findings are supported by substantial evidence." 89 Idaho at 407, 405 P.2d at 757, quoting from *Nash v. Hope Silver-Lead Mines, Inc.*, 79 Idaho 137, 142, 314 P.2d 681 (1957).

In addition, it has been held that where further documentation was essential to resolving issues this Court had chosen to hear on appeal, record augmentation would be ordered by this Court on its own motion:

"This court has the power to order transmitted to it the original exhibits in a cause on appeal, if, upon examination of the record, a consideration and examination of such exhibits is required for the proper determination of the issues raised." *Eldridge v. Payette-Boise W.U. Ass'n*, 50 Idaho 347, 348, 296 P. 1022, 1022 (1931).

Applying these principles to the present case, it has to be presumed that the evidence presented against Lopez convinced the jury and the presiding magistrate that she was, in fact, carrying on in the trade of prostitution. The majority errs mightily in denigrating the State's presentation with that statement which I so vigorously challenge.

III.

A final word should be said regarding Lopez' contention that the phrase "otherwise engages in sexual activity as a business" might be interpreted by law enforcement officials so as to apply to wholly innocent parties. By putting together a variety of cleverly chosen dictionary meanings, Lopez is able to argue that

". . . this statute could well be interpreted to cover the practice of counselors, psychologists, and medical doctors in giving advice and instruction to patients concerning their sexual effectiveness within a marriage relationship *a la a*

Masters and Johnson. Also, it would seem possible that this language would cover the activities of a surgeon who performs vasectomies or a gynecologist who performs hysterectomies.

"It also seems possible that the statutory language could be used in an attempt to prosecute exotic dancers for engaging in 'sexual activity as a business.'"

I am not impressed and do not hesitate to label this argument as pure, unadulterated frivolity.

While Lopez may very well entertain a genuine concern for her innocent fellow men who may be ensnared in the processes of enforcing a law aimed at suppressing prostitution, it is a well-established principle of constitutional law that such concern does not confer upon Lopez the requisite standing to mount the attack:

"Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. [citations] A closely related principle is that constitutional rights are personal and may not be asserted vicariously. [citation] These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional systems courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. [citation]" *Broadrick v. Oklahoma,* 413 U.S. 601, 610–11, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973).

The power of a court to declare a legislative enactment unconstitutional dates back, in the federal system, to *Marbury v. Madison,* 1 Cranch 137, 2 L.Ed. 60 (1803). But the exercise of that power has always been sparingly invoked:

"'In the exercise of that jurisdiction, it [the Court] is bound by two rules, to

which it has rigidly adhered: one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is applied.' [Citation.] Kindred to these rules is the rule that one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." [Citations omitted.] *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960).

Until today those same principles have governed this Court when asked to declare a legislative enactment unconstitutional:

"'"Courts never anticipate a question of constitutional law before the necessity of deciding it arises." [Citation.] . . .

" ' . . . . . . .

"'It is a fundamental principle of constitutional law that a person can be heard to question the constitutionality of a statute only when and insofar as it is being, or about to be, applied to his disadvantage. Cases. . . . It follows "that one may not urge the unconstitutionality of a statute who is not harmfully affected by the particular feature of the statute alleged to be in conflict with the constitution."' [Citation.]

" ' . . . . . . .

"' . . . only someone who shows himself injured may complain; he cannot *champion others who do not choose to complain.*'" (Emphasis theirs.) *Poffenroth v. Culinary Workers Union Local No. 328,* 71 Idaho 412, 414, 232 P.2d 968, 969 (1951).

It seems inconceivable to me that this Court could not uphold the constitutionality of the present statute, whatever its inadequacies, if it had not forgotten its overriding obligation always to interpret statutes so as to fulfill the intent of the people and never to defeat it. Where, as here, a defendant has not even alleged that she was harmed by a supposed defect in statutory draftsmanship

but only that, by wrenching the statutory language out of its obvious context, one might imagine hypothetical parties who might at some future date be aggrieved thereby, I see no reason to reach out and strike down a legislative enactment of the people of Idaho. *Smith v. Goguen, supra,* cited in the majority opinion, holds that a statute which may be facially vague or overbroad will be "corrected either by amendment or judicial construction." Here it would be a simple matter for this Court to authoritatively construe the 1972 statute so as to hold it applies only to prostitutes, and not to gynecologists, psychologists, and exotic dancers.

### IV.

Last but not least is that which should have come first, not only with this dissent but in the majority's disposition of the appeal. Justice Bakes concurs in reversing the conviction because of his belief that the complaint in this case fails to charge an offense. If he is correct—and the majority does not say that he is not—then the case should be decided on that ground. It is axiomatic that courts do not reach out and strike down statutes where other grounds are dispositive. Even more fundamentally, if Justice Bakes be correct in asserting that the complaint fails to state a criminal charge, then this Court lacks any jurisdiction over the case at all. It must follow, therefore, that the majority necessarily adheres to the general rule that a complaint framed in the language of the statute is sufficient. *See, State v. Huff,* 56 Idaho 652, 57 P.2d 1080 (1936), and cases cited therein. Of course, a complaint drawn in the bare language of the statute may fail to notify a defendant of the precise character of the offense so that he cannot prepare an adequate defense, or may be so imprecise that conviction thereof would not serve to bar a second prosecution for the same offense. This is a "specificity" defect and, as a matter of constitutional right, the defendant may, by timely motion, require the State to amend its complaint so as to pro-

vide further particulars. I.C. § R19–3901. *State v. Pruett,* 91 Idaho 537, 428 P.2d 43 (1967); *State v. Sedam,* 62 Idaho 26, 107 P.2d 1065 (1940). However, since a defendant's constitutional right to insist on a more fully particularized complaint is personal to him, it may be waived. I.C.R. 12(f) provides that it *is* so waived if it is not raised prior to trial. It is only where the complaint fails to charge any offense at all (an "essential elements" defect) that the defect reaches jurisdictional proportions and may be noticed "at any time during the pendency of the proceedings." I.C.R. 12(b)(2). *See,* Note: Indictment Sufficiency, 70 Col. L.Rev. 876 (1970). I would hold that the complaint under which Lopez was convicted sufficed to enable her to understand the nature of the charges brought against her and to prepare a defense thereto and that her failure to raise any objection to the complaint prior to trial constituted a waiver of such objections on appeal. Justice Bakes relies on some authority which "facially" would seem to justify the result he would achieve. However, a review of cases which in point of time are both before and after those cases cited leads inexorably to the conclusion that the statements in his cases are not well founded. The Court today should be upholding the decision rendered by Judge Hagan, on the one hand, and on the other, should clarify the law in the field opened up by Justice Bakes.