573 P.2d 116

**Michael Jerome STOCKWELL,
Petitioner-Respondent,**

v.

**STATE of Idaho, Defendant-Appellant.**

No. 12118.

Supreme Court of Idaho.

Dec. 2, 1977.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for defendant-appellant.

Peter D. McDermott of McDermott & McDermott, Pocatello, for petitioner-respondent.

BAKES, Justice.

This is an appeal from an order granting Michael Jerome Stockwell's petition for a writ of *habeas corpus*.[1] If the procedural irregularities on both sides are overlooked, the appeal by the state attempts to raise the following issues: (1) whether a magistrate in a preliminary hearing may reduce

---

1. The petition was titled in the criminal case, "*State of Idaho, Plaintiff, v. Michael Jerome Stockwell, Defendant,*" but was filed in the Bannock County District Court as Civil No. 34012.

the charge in a complaint when the evidence presented in a preliminary hearing is capable of sustaining inferences supporting the charge in the complaint; (2) under what circumstances can the prosecuting attorney have a preliminary hearing reopened to submit additional evidence supporting the charge; (3) under what circumstances may a prosecutor in a felony case file a second criminal complaint following his dismissal without prejudice of a first criminal proceeding for the same charge in which the committing magistrate has bound the defendant over to district court on a reduced charge. These questions are presented in the following factual context.

On October 18, 1975, the defendant respondent Michael Jerome Stockwell shot and killed Robert Miller while he was a guest in Miller's home. On the following day, an investigating police officer filed a criminal complaint charging Stockwell with murder in the second degree. On October 30, a preliminary hearing was held in the magistrate's division of the district court. At that hearing, Gary Drzymolski, who was an acquaintance of both Stockwell and Miller and a witness to the shooting, testified to the following scenario.

Drzymolski and Stockwell met at Miller's house at approximately noon on the day of the shooting to replace a water pump on Miller's car. The three remained in one another's company throughout most of the afternoon and evening of that day. During that time, between noon and 9:00 p. m., the time of the shooting, they consumed approximately five twelve-packs of beer. Sometime before the shooting, the three of them retired to the recreation room in Miller's home to listen to the stereo and continue drinking beer. By this time, Drzymolski was "really drunk and from the actions of the other two guys I would say they were just as drunk as I was."

While they were all in the recreation room, Miller unsheathed a knife and slit Drzymolski's pants three inches up from the bottom, then moments later he did the same thing to defendant Stockwell's pants. Stockwell, according to Drzymolski, pulled a gun a moment later and told Miller never to pull a knife on him again, then held the gun close to Miller and fired two shots, neither of which hit Miller. Miller lunged forward at Stockwell and Stockwell kicked at him and fired another shot, this one hitting Miller in the chest and killing him. Stockwell attempted to resuscitate Miller, but his efforts were to no avail.

Four other witnesses were called at the preliminary hearing. One, a pathologist, testified that the cause of Miller's death was a gunshot wound. Another, the ambulance attendant who had answered the emergency call, testified that a blood sample was taken from the decedent and later analysis showed that the decedent's blood sample had an alcohol content of .266 percent. The other two witnesses to testify were detectives from the Pocatello police department who had answered the initial call reporting the shooting. None of these witnesses' testimony concerned the degree of Stockwell's intoxication either before or after the shooting.

After hearing this testimony and argument by counsel, the magistrate said the following:

"[One of the things] that bothers me is the fact that the deceased had a .266 . . . blood alcohol content. Mr. Drzymolski testified that they were all three drunk. I have no idea of the capacity of the defendant or either one of them, but I know that 20 bottles of beer over a period of time, if that's what they did is a great deal of alcohol, it's an amount equal to almost a fifth of whiskey at least. I suppose the court could make an error and if the court errors I'm going to (inaudible) half of the defendant on this matter. . . ." Clk.Tr., p. 140.

At this point the prosecutor, anticipating that the magistrate intended to reduce the charge against Stockwell from second degree murder to manslaughter, asked permission of the court to reopen the case:

"I would ask at this time to reopen if the court is going to make a conclusion on the ability of this witness because I have two witnesses that can testify to the ability of

the person involved who were there beforehand as to their ability to maneuver and maintain their position even to the testimony of the eye witness. And before the court pronounces any decision in this matter I would ask for permission to reopen if there is any question in the mind of the court as to the properness of this charge." *Id.*

The magistrate denied the prosecutor's motion to reopen on the ground that, "as far as I'm concerned both sides have rested and the arguments have been made." *Id.* The magistrate then bound the defendant over to the district court on a charge of voluntary manslaughter and reduced his bond from $50,000 to $15,000.

Up to this point the proceedings were fairly straightforward. But then, on October 30, 1975, the afternoon of the same day of the preliminary hearing, after a discussion about the dismissal of the charge with the district judge, the prosecutor upon his own motion and without notice to Stockwell or his attorney filed a motion in the district court to dismiss the charge against Stockwell, "without prejudice in the interests of justice." The motion filed by the prosecuting attorney contained a cryptic, "It is so ordered," typed on the bottom thereof which the district judge signed.[2]

On that same day, in an apparent attempt to circumvent the ruling of the magistrate reducing the charge against Stockwell from second degree murder to voluntary manslaughter, a second criminal complaint[3] charging Stockwell with second degree murder was sworn out. Stockwell was re-arrested on this complaint, and arraigned before a different magistrate who reset bond at $50,000 and set a new preliminary hearing for November 12, 1975.

On Friday, November 7, at 5:00 p. m., Stockwell, through his attorney, filed the petition for writ of *habeas corpus* in the district court (District Court Case No. 34012) seeking his discharge from custody on the ground that the actions of the prosecutor in dismissing the first criminal proceeding in which he had been bound over on the lesser charge of voluntary manslaughter and then refiling the same second degree murder charge was in violation of due process under the federal and state Constitutions, and in violation of Rule 5.1(a) and (b) of the Idaho Rules of Criminal Procedure. The transcript indicates that the district judge signed the order for a writ of *habeas corpus* on Saturday, November 8, 1975. The hearing on the *habeas corpus* matter was held the following Monday, November 10, 1975, at 4:00 p. m. The record indicates that the prosecuting attorney was not aware of the *habeas corpus* proceedings until the day of the hearing when he was apparently served with the order and the writ. The record does not indicate that the sheriff, who apparently had custody, was ever served. The record does not indicate whether a return to the writ or an answer to the return, as contemplated by I.C. § 19-4201 *et seq.* was ever filed.[4]

At the hearing held on November 10, at 4:00 p. m., no evidence was submitted by the petitioner on behalf of his claim. The prosecuting attorney advised the court that he had brought the defendant into court as ordered, and the entire hearing consisted of a colloquy between the prosecuting attorney on the one hand and the defendant's counsel on the other. That colloquy was concerned primarily with the propriety of

---

2. The district judge "expressed misgivings concerning such action [the dismissal of the reduced charge] but again suggested that the Prosecutor research the matter and if he still wished the Order signed he would be accommodated." Clk.Tr. at 68.

3. The complaint in the first criminal proceeding in the magistrates court was filed as Bannock County Magistrates Case No. 8188. The second complaint was Case No. 8219.

4. The prosecuting attorney apparently had at most a few hours to read the papers which were served on him and to arrange to have Stockwell in court by 4:00 p. m. that Monday. The failure of the record to disclose the pleadings which should ordinarily accompany a *habeas corpus* proceeding makes the function of this Court more difficult. However, in view of the manner in which the petition was filed and served by the petitioner, and handled by the court, the blame can hardly be attributed to the state.

the prosecuting attorney's *ex parte* dismissal of the first criminal proceeding in which the defendant had been bound over to the district court for voluntary manslaughter, and then filing the second criminal complaint for second degree murder for the identical crime which was contained in the first criminal complaint.

On November 20, 1975, the district court entered a memorandum decision and order in which, among other things, it said the following:

(1) Although the prosecutor had additional witnesses present at the preliminary hearing, he had made no showing of the nature of the evidence he expected to elicit from those witnesses;

(2) The prosecutor did not contend he had newly discovered evidence not available to him at the time of the first preliminary hearing (which the court apparently must have felt was the only circumstance in which another complaint could be filed); and,

(3) The procedure followed by the prosecutor of dismissing an action and refiling did violence to Stockwell's due process rights and was not provided for by the Rules of Criminal Procedure.

The district court concluded that it was "left with no alternative but to grant Petitioner the relief prayed for." This was done by another cryptic order attached to the end of the memorandum decision, which read as follows:

"Petitioner's prayer for relief is GRANTED and the Motion to Dismiss and Order of Dismissal affirmed. The Sheriff of Bannock County, Idaho, is hereby directed to release Petitioner from custody.[5] "IT IS SO ORDERED. "DATED this 20th day of November, 1975.

"[Signed] _____
"District Judge" Clk.Tr., p. 73.

The state has appealed. We reverse.

I

The first issue which must be addressed is the appealability of the order entered by the district court.

The order entered by the district court is not easily categorized for purposes of determining the state's statutory right to bring this appeal. *See* footnote 1, *supra*. If the order is considered to be the granting of a petition for *habeas corpus* by ordering the release of the petitioner, which it no doubt was intended to be, it is appealable under I.C. § 13–201 as "a final judgment in an action or special proceeding commenced in the [district] court." In re Blades, 59 Idaho 682, 86 P.2d 737 (1939). *See also Coffelt v. State*, 92 Idaho 235, 440 P.2d 355 (1968). If it is considered an order dismissing the second criminal complaint, it is probably analogous to dismissal on demurrer and appealable under I.C. § 19–2804(1).

■■■ We need not decide, however, how this order shall be categorized for purposes of the statutes governing appeal because

5. The state has apparently misunderstood the meaning of that portion of the order which reads, ". . . and the Motion to Dismiss and Order of Dismissal affirmed," thinking that by that statement the district judge had dismissed the second criminal complaint which had been filed in the magistrates court as Case No. 8219. At the time that Stockwell filed his Petition for Writ of Habeas Corpus he also filed in the district court case No. 34012 a pleading entitled "Motion to Dismiss With Prejudice" in which he asked that the order of dismissal "hereunto entered in the above entitled matter on October 20, 1975 [Magistrates Case No. 8188], be amended in that such charge be dismissed with prejudice; that to allow the Prosecutor to dismiss the voluntary manslaughter charge without prejudice and at the same time refile a second Complaint of Second Degree Murder against the defendant on the same facts and circumstances, denies said defendant due process of law and is contrary to fundamental fairness." Clk.Tr., p. 49. At the hearing on the Petition for Writ of Habeas Corpus, and presumably also on this Motion to Dismiss With Prejudice, the prosecuting attorney suggested to the court that if he had been in error to dismiss the first action and then refile, that he be permitted to reinstate the first proceeding which the magistrate had reduced to voluntary manslaughter, and proceed on the voluntary manslaughter charge. The statement in the district judge's November 20, 1975, order, ". . . and the Motion to Dismiss and Order of Dismissal affirmed," is apparently a denial of this request by the prosecuting attorney.

this Court has plenary appellate jurisdiction under Art. 5, § 9, of the Idaho Constitution to review any decision of the district court, even if the party bringing the appeal has no statutory right to appeal the decision. *State v. Lewis*, 96 Idaho 743, 536 P.2d 738 (1975). In *Lewis* we exercised this authority to clarify important points in the construction of the kidnapping and rape statutes and to prevent further errors of the kind which led to criminal charges being improperly dismissed in that case. In this case we again are presented with important questions concerning the construction of Idaho's Constitution and its criminal rules and statutes—questions which we note are of a recurring nature, *see Rufener v. Shaud*, 98 Idaho 823, 573 P.2d 142 (1977), and the resolution of which will be of practical importance in the administration of the criminal justice system in this state—which must be resolved to prevent future criminal proceedings from being improperly dismissed or reduced by erroneous rulings of the magistrate or district judge. Accordingly, we choose to review the decision of the district court under our plenary power of appellate review granted by Art. 5, § 9, without reference to the state's statutory right of appeal.

## II

### THE DECISION OF THE MAGISTRATE

A. The state argues that the magistrate erred by refusing to allow the prosecutor to reopen the preliminary hearing and call additional witnesses. Neither the statutes nor the Rules of Criminal Procedure set forth rules for calling of witnesses at preliminary hearings or detail the magistrate's authority to decline to hear testimony from additional witnesses who were present or to prevent a prosecutor from reopening his case to allow him to present additional evidence concerning an element of the crime. Accordingly, we must decide the propriety of the magistrate's action according to general principles of criminal law governing proceedings in which parties' substantial rights are not finally determined, but merely preliminarily examined.

■ First, the overriding concern "in a criminal prosecution is . . . that justice shall be done. . . . [T]he twofold aim of [the criminal justice system] is that guilt shall not escape or innocence suffer." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). In our opinion, the defendant's right to a fair preliminary hearing would not have been compromised had the prosecutor been allowed to reopen the preliminary hearing to call additional witnesses whose testimony would be relevant to the question of whether or not the defendant was intoxicated to such a degree that he could not have been able to form the intent necessary to commit murder. The procedures to be followed in a preliminary hearing are not so formal that if a magistrate has decided that the evidence which the prosecutor thought was adequate to show probable cause was not sufficient to convince the magistrate that there was probable cause the prosecutor has lost or forfeited all right to introduce additional evidence upon that issue even when he has additional witnesses who were present and available to testify and can proceed to introduce additional evidence without delay. On the contrary, in this circumstance where the prosecutor and magistrate differed in their assessment of whether the evidence was sufficient to show probable cause concerning one element of the crime and where the prosecutor had other witnesses available to offer additional evidence concerning that element, the magistrate abused his discretion by refusing to allow the prosecutor to reopen the case.

## III

### THE DECISION OF THE DISTRICT COURT

The following are among the factors that the district court considered critical in reaching its decision:

(1) When the magistrate declined to allow the prosecutor to reopen his case for presentation of additional evidence at the

preliminary hearing, it was not apparent what kind of evidence he hoped to produce;

(2) The magistrate had not compromised the prosecution's rights at the preliminary hearing;

(3) The dismissal and the refiling of the charge were not provided for in the Rules of Criminal Procedure and therefore the refiling was in violation of the Rules of Criminal Procedure; and,

(4) The dismissal and refiling of the charges violated Stockwell's due process rights and if allowed to stand would set dangerous precedent that would allow prosecutors to circumvent adverse rulings of a magistrate at the preliminary hearing.

We disagree with those assessments in this case. As we have already shown in the portion of the transcript quoted at p. 119 *supra*, the prosecutor had indicated that the subject matter of the additional evidence he wished to introduce at the preliminary hearing concerned Stockwell's physical impairment due to intoxication, which was certainly relevant to the impairment of his mental faculties, and the magistrate erred in failing to allow the prosecutor to reopen the proceeding.

**A**

■ The statutes specifically contemplate that a second criminal complaint may be filed in a felony case following dismissal of the first criminal action. I.C. § 19–1717 provides:

> "19–1717. What is not a former acquittal.—If the defendant was formerly acquitted on the ground of variance between the indictment and the proof, or *the indictment was dismissed* upon an objection to its form or substance, or *in order to hold the defendant for a higher*

*offense*, without a judgment of acquittal, it is not an acquittal of the same offense." (Emphasis added).

This provision is also applicable to criminal proceedings brought by information rather than indictment. *See* I.C. § 19–1303. I.C. § 19–3506 provides the following:

> "19–3506. Effect of dismissal as bar.— An order for the dismissal of the action, as provided in this chapter, is a bar to any other prosecution for the same offense, if it is a misdemeanor; *but it is not a bar if the offense is a felony.*" (Emphasis added).

Thus, I.C. § 19–1717 specifically contemplates a dismissal of a proceeding against a defendant in order to bring higher charges against him and I.C. § 19–3506 specifically provides that the first dismissal is not a bar to second prosecution if the offense involved is a felony. Thus, none of Stockwell's rights under the statutes of Idaho were violated by the second filing.

Neither do the Idaho Rules of Criminal Practice and Procedure necessarily prevent the refiling. I.C.R. 48(a) provides that the prosecuting attorney "may by leave of court" file a dismissal of a complaint. I.C.R. 48(b), like I.C. § 19–3506, provides that a dismissal which "will serve the interests of justice" is not a bar to a second prosecution if the offense is a felony. Thus, the dismissal and refiling are not prohibited either by the statutes or the criminal rules of this state. The motion for dismissal filed by the prosecuting attorney specifically stated that the motion for dismissal was "without prejudice and in the interests of justice," and the district court's order stated, "It is so ordered." In his order in the *habeas corpus* proceeding the district court again affirmed that first order of dismissal.[6] Under these circumstanc-

6. At the time of the hearing on the *habeas corpus,* the prosecuting attorney was requesting the court to reinstate the first criminal proceeding, No. 8188, and permit the state to go to trial on the voluntary manslaughter charge, while the defendant was arguing that the order of dismissal in No. 8188 not be set aside but should be made with prejudice rather than without prejudice as the original district

court order provided. The statement in the district judge's *habeas corpus order* of November 20, 1975, indicates that he denied the request of both parties, and let the order of dismissal without prejudice in No. 8188, stand.

This action of the district court is of more than passing interest in view of the argument made by Justice Bistline in his dissent to the effect that because the district judge did not

es the right of the prosecutor to refile was clearly protected.

■ The dissenting opinion of Justice Bistline relies strongly upon the language of I.C. § 19–3504 which requires that when the court dismisses the action upon the application of the prosecuting attorney, "the reasons of the dismissal must be set forth in an order entered upon the minutes." Admittedly, the motion of the prosecuting attorney set out no grounds other than "in the interests of justice," and the record contains no minute entry setting out the court's reasons for the dismissal as required by I.C. § 19–3504. While the district court may have erred, as the dissent argues, in failing to set out the reasons for dismissal in the minutes, it does not follow that the order is thus void. The cases of *People v. Orin*, 13 Cal.3d 937, 120 Cal.Rptr. 65, 533 P.2d 193 (1975), and *Salt Lake City v. Hanson*, 19 Utah 2d 32, 425 P.2d 773 (1967), relied upon by the dissent, certainly do not so hold.

In the *Salt Lake City* case the city brought a proceeding comparable to a common law writ of certiorari, to appeal the dismissal of seven complaints which charged violations of a Salt Lake City ordinance. The judge had dismissed the complaints because they were signed by a police officer other than the arresting officer, and then only by a facsimile signature. The city argued that not only was the dismissal erroneous, but that the trial court had failed to set out his reasons in the court minutes. The Utah Supreme Court held first that the particular officer's facsimile signatures on the complaints were in compliance with Utah law, even though he was not the arresting officer. Additionally, the court held that the trial judge should have set out the reasons for the dismissal in the minutes. The court then "reversed" the decision of the trial court on both grounds, thus reinstating (not terminating, as in this case) the criminal proceedings.

In the other case relied upon in the dissent, *People v. Orin, supra*, the trial court had, over the objection of the prosecuting attorney, dismissed the first two counts of the information when the defendant pleaded guilty to a third count. The trial court set out no reasons in the minutes as required by the California statute which is substantially the same as our I.C. § 19–3504. The record showed that the trial court was making a "plea bargain" for the prosecutor, over his objection. The case was on direct appeal by the state from the order of dismissal. The court did say what the dissenting opinion quotes, *post* at 140–141, but it also said the following:

"While it is probably true that dismissals under section 1385 are frequently ordered on mere statements of 'grounds' (i. e., 'in furtherance of justice') without any statement of reasons, this situation appears in a different light when the People oppose the dismissal and raise the issue on appeal.

"As the court said in *People v. Curtiss* (1970) 4 Cal.App.3d 123, 127, 84 Cal.Rptr. 106, 109: 'We recognize that throughout the state dismissals occur every day wherein the minutes do not set forth the reasons. A defendant, for example, is charged with four counts of burglary, pleads guilty to one count, the district attorney moves to dismiss the remaining

make the necessary findings required by I.C. § 19–3504 at the time that he entered the order of dismissal, that the dismissal is of no force and effect. Presumably, then, the first criminal case, No. 8188, would still be pending on the voluntary manslaughter charge. On this point it would appear that Justice Bistline is siding with the prosecuting attorney who requested that the order of dismissal of the first action, No. 8188, be set aside and that proceeding be reinstated. It would also seem to necessarily follow that if, as the dissenting opinion suggests, the order of dismissal of the first action

No. 8188 was "fatally defective," *post* at 136–137, and that the district court lacked jurisdiction to enter such an order of dismissal, *post* at 135, that therefore the district court erred in granting the *habeas corpus* petition because the first proceeding would still have been pending against the defendant, and on November 20, 1975, he would have been legally detained. Given that rationale in the dissenting opinion it is difficult to understand how the dissent can nevertheless argue in favor of the granting of the *habeas corpus* petition.

three counts and the judge grants the motion without specifying the reasons in the minutes. In such a case, however, it is the prosecutor's own case which he is moving to dismiss and in so doing he is acting upon his own responsibility. Despite the defective procedure, no harm is done because the prosecutor obviously would not appeal from the order of dismissal.' " 533 P.2d at 198, n. 10.

"Dismissals under section 1385 may be proper before, during and after trial. (*People v. Superior Court (Howard)*, supra, 69 Cal.2d 491, 503, 72 Cal.Rptr. 330, 446 P.2d 138.) Before trial, such dismissals have been upheld where designed to enable the prosecution '*to obtain further witnesses*, to add additional defendants, to plead new facts, or to plead new offenses . . . .' (*People v. Silva* (1965) 236 Cal.App.2d 453, 457, 46 Cal.Rptr. 87, 90; see also, *Arnold v. Williams* (1963) 222 Cal.App.2d 193, 196, 35 Cal.Rptr. 35.)" 533 P.2d at 199.

"We do not say that the People's approval is in every instance indispensable to a dismissal under section 1385 (see, e. g., *People v. Superiod [Superior] Court (Howard)*, supra, 69 Cal.2d 491, 502, 72 Cal.Rptr. 330, 446 P.2d 138) for to so hold would curtail or perhaps abrogate the sentencing discretion resident in the court, but such discretion must be reasonably exercised and where the court's action lacks reason it may be invalidated *upon timely challenge*." 533 P.2d at 201.

In this case the defendant Stockwell did not seek to challenge and reverse the action of the district court in dismissing the first proceeding because of a failure of the court to set out the reasons for the dismissal in the minutes, and thus to seek reinstatement of the dismissed action as the courts did in *Salt Lake City v. Hanson, supra*, and *People v. Orin, supra*. Rather, Stockwell, in his habeas corpus proceeding, also filed a "motion to dismiss with prejudice" in which he not only affirmed the order of dismissal in the first proceeding, but also sought to amend the order of dismissal to make it "with prejudice." Neither *People v. Orin, supra*, nor *Salt Lake City v. Hanson, supra*,

are authority for permitting the defendant Stockwell to argue that the district court erred in failing to set out the reasons for the dismissal in the minutes and at the same time assert that the dismissal should not be set aside as the prosecutor had requested, but should be "with prejudice." Had the defendant Stockwell argued that the failure to set out the reasons for dismissal in the minutes was grounds for setting aside the dismissal of the first action and reinstating that action, then the *Salt Lake City* case would have supported that argument. However, neither that case, nor *People v. Orin, supra*, support his contention that he should now be released from all charges. The district court erred when it granted the writ releasing the defendant.

### B

The next issue is whether the dismissal and refiling violated the defendant's rights under the due process clauses of the state or federal Constitutions. The filing of a second criminal action following dismissal of the first criminal action after preliminary proceedings is not a *per se* violation of the due process clause of the federal Constitution. *United States v. Davis*, 487 F.2d 112 (5th Cir. 1973), *cert. denied* 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974). *See DeMarrias v. United States*, 487 F.2d 19 (8th Cir. 1973), *cert. denied* 415 U.S. 980, 94 S.Ct. 1570, 39 L.Ed.2d 877 (1974); *Pearce v. Cox*, 354 F.2d 884 (10th Cir. 1965), *cert. denied* 384 U.S. 976, 977, 86 S.Ct. 1869, 1871, 16 L.Ed.2d 685 (1966). Neither have our sister states interpreted the due process or double jeopardy clauses of their own constitutions to make this practice a *per se* violation of the defendant's rights. *E. g.*, the following cases have allowed the state to file a second complaint accusing a person of a crime after the original complaint was dismissed, *Skinner v. Superior Court, In and For Pima County*, 475 P.2d 271 (Ariz.1970); *Wilson v. Garrett*, 106 Ariz. 287, 448 P.2d 857 (1969) (refiling before a different magistrate prohibited by statute, but refiling before same magistrate allowed); *In re Russell*, 12 Cal.3d 229, 115 Cal.Rptr. 511, 524

P.2d 1295 (1974) (*dicta* citing with approval holding in *People v. Uhlemann,* 9 Cal.3d 662, 108 Cal.Rptr. 657, 511 P.2d 609 (1973), that state may prosecute under an indictment after a complaint against the defendant has been dismissed); *State v. Holloway,* 219 Kan. 245, 547 P.2d 741 (1976); *Walters v. Williams,* 474 P.2d 661 (Okla.Cr.1970); *Nicodemus v. District Court of Oklahoma County,* 473 P.2d 312 (Okla.Cr.1970); *State v. Weiss,* 73 Wash.2d 372, 438 P.2d 610 (1968); *Richmond v. State,* 554 P.2d 1217 (Wyo.1976); *see also* cases collected in footnote 3 of *Richmond v. State, supra,* 554 P.2d at 1222; while the following cases have allowed the state to prosecute under an indictment returned following the dismissal of a complaint, *State v. Gonzales,* 111 Ariz. 38, 523 P.2d 66 (1974); *State v. Elling,* 19 Ariz.App. 317, 506 P.2d 1102 (1973); *People v. Uhlemann, supra* ; *State v. Peavler,* 88 N.M. 125, 537 P.2d 1387 (1975); *Simpson v. Sheriff, Clark County,* 86 Nev. 803, 476 P.2d 957 (1970). Like the federal government and our sister states, we do not construe the due process clause of the Idaho Constitution to create a *per se* prohibition against the refiling of criminal charges after the charges have first been dismissed with approval of the court and without prejudice. *Cf. State v. Urie,* 92 Idaho 71, 437 P.2d 24 (1968); *State v. McKeehan,* 49 Idaho 531, 289 P. 993 (1930).

▇ That is not to say, however, that dismissal and refiling of criminal complaints by the prosecutor done for the purpose of harassment or delay or forum-shopping cannot be a violation of the due process clause. We quote approvingly the following passage from *Nicodemus v. District Court of Oklahoma County, supra* :

"While the present statutes do not make dismissal of a prosecution—at the preliminary examination stage—a bar to fur-

ther prosecution for the same offense, this Court views critically the practice of 'shopping' among magistrates or the repeated refiling of a charge until a favorable ruling is obtained. Without the production of additional evidence, or the existence of other good cause to justify a subsequent preliminary examination, such a practice can become a form of harassment which may violate the principle of fundamental due process and equal protection of the law, as announced by the United States Supreme Court. *This is not to say that* when new evidence becomes available or *when the prosecutor believes—in good faith—that the magistrate committed error, the charge should not be refiled* ; but absent such circumstance, the continued refiling—numerous times—of a charge which has been dismissed by a magistrate is not to be desired. The facts of the instant case do not approach such an offensive degree to be violative of fundamental fairness. Accordingly, this Court holds that petitioner is not entitled to a writ of prohibition, for as stated before, under existing statutes, dismissal of a prosecution at a preliminary examination is not a statutory bar to further prosecution for the same offense regardless of the 'judicial title' of the official sitting as examining magistrate." 473 P.2d at 316. (Emphasis added).

In this case the prosecutor had cause to bring a second criminal complaint against Stockwell based upon his good faith belief that the magistrate erred in the preliminary hearing, both as to the evaluation of the evidence admitted and the magistrate's failure to allow the prosecuting attorney to present more evidence. A review of the record clearly discloses that the prosecuting attorney was not judge shopping.[7] Because

---

7. At the hearing before the district court on November 10, 1975, two days before the day set for the preliminary hearing on the second complaint, the prosecuting attorney stated:

"While it may appear that we are forum shopping, it was not intended to be that, and I did not request a different forum. Apparently a different judge was assigned on this next hearing, but I did not request it, and I would not have objected had the same judge reheard the matter, because I would have intended to put on additional evidence and particularly this witness who is outside the state and would be available for this new hearing." Rptr. Tr., p. 12.

the prosecutor had a good reason for filing the second criminal complaint, the district court erred in granting the petitioner relief on his *habeas corpus* petition.

Accordingly, we reverse the judgment of the district court. We emphasize that our holding is a narrow one based upon the following circumstances of this case: (1) that the magistrate erred by preventing the state from reopening and introducing additional relevant evidence at the preliminary hearing; (2) that the record in this case does not suggest that the dismissal and refiling of the charge was done for harassment or delay or because the prosecutor had made no effort to present available evidence at the first preliminary hearing; and (3) the prosecutor followed steps in refiling the charge which were not prohibited by the statutes or criminal rules in felony cases.

The second criminal complaint, which apparently is still pending,[8] is freed from the constraints of the district court's *habeas corpus* order. The bond which was in effect on November 20, 1975, the date of the *habeas corpus* order, is reinstated, subject to further order of the court below.[9]

The order of the district court granting the petitioner's writ of *habeas corpus* is

reversed and the cause remanded with directions to quash the writ.

McFADDEN, C. J., concurs.

DONALDSON, J., concurs in result.

SHEPARD, Justice, specially concurring and dissenting.

I concur in the result reached, however, I disagree with both the majority and dissenting opinions.

The majority holds that the magistrate erred in refusing to allow the prosecutor to re-open after both sides had the opportunity to present evidence, had rested and had made argument. Such a decision is clearly within the discretion of the presiding judge. The majority speculates as to a number of matters that the prosecutor *might* have been able to prove which *might* have buttressed the State's case. The majority forthrightly sets forth the prosecutor's statement in support of his motion to re-open and I believe the prosecutor and this Court is and should be bound by the extent of that statement. I see nothing contained therein which *necessarily* should have convinced the magistrate, the district court or this Court that such proffered testimony "as to their ability to maneuver and main-

At another point in the record the prosecuting attorney made clear his intention:

"Now, I don't know why it was, it wasn't upon my request that a different magistrate received the new proceeding. I certainly did not request it, and I would have had no objection to Judge Bennett rehearing the matter. I think he is a fine magistrate and, although we don't always see eye to eye, I think that's—once in a while it happens between the counsel and the judge, and that's the prerogative of the judge and I think counsel, but I did not request that a different forum or different court rehear the matter." Rptr. Tr., p. 11.

8. When the district court entered its order in the *habeas corpus* proceeding on November 20, 1975, it ". . . Granted [the] Petitioner's Prayer for relief . . ." and directed the sheriff of Bannock County ". . . to release the Petitioner from custody." While the *habeas corpus* petition did not actually contain a prayer for relief, the primary thrust of the petition was to restrain the magistrate's court in the second proceeding, Case No. 8219, from conducting a second preliminary hearing. The

*habeas corpus* order did not purport to dismiss the second criminal complaint, Case No. 8219, and no other order to that effect is in the record.

9. At the November 10, 1975, hearing on the *habeas corpus* petition, when the district judge was advised that a preliminary hearing was set for two days later on the second criminal complaint (Case No. 8219), the district judge, with the concurrence of both counsel, vacated the preliminary hearing. Counsel for the defendant stated that ". . . we would like to get this matter [the *habeas corpus* petition] resolved before the preliminary." Also without objection from the prosecuting attorney, the bond was reduced from $50,000, at which the second magistrate had set it, to $15,000, the amount to which the first magistrate had reduced it when he bound the defendant over on the voluntary manslaughter charge. However, the district judge indicated that the $15,000 bond was ". . . subject to increase if the facts so indicate." Rptr. Tr., p. 16.

tain their position" was relevant on the question of reducing the charge.

While the majority discusses the question of fairness to the State, I believe equally important is the doctrine of fairness to the defendant. We do not know and the record does not disclose what witnesses the defendant may have had available who could testify as to the quantum of intoxication of the participants. We do not know and the record does not disclose whether the defendant might have been unfairly prejudiced in having possible witnesses dismissed at the conclusion of the State's case and therefore unable to testify if the State had been allowed to re-open. Admittedly, such is blatant speculation, but no less so is much of the State's argument.

BISTLINE, Justice, dissenting.

In this case, and in the companion case of *Rufener v. Shaud*, 98 Idaho 823, 573 P.2d 142 (1977), we review the actions of two district judges who were presented with the ex parte and unsupported motions of prosecutors to dismiss felony charges laid against defendants by the only judicial officials empowered by our constitution to hold preliminary hearings and to make exactly such determinations as were made.

In the *Rufener* case, the preliminary hearing took more than five days, and involved testimony encompassing more than 1,000 pages of transcript. The magistrate, Judge Granata, did not act at all perfunctorily, but rendered a painstaking explanation of his decision to bind Mrs. Rufener over on two felonies, and Mr. Rufener on three felonies. This was on May 22, 1975. Shortly thereafter, the prosecutor complied with the requirement that he file informations against the defendants. I.C. § 19–1302. Four months later, however, the prosecutor approached District Judge Bellwood ex parte, and on the strength of a motion stating only that he "desired" to dismiss and start anew, obtained the judge's signature on orders dismissing all charges against both Rufeners.

The actions of the prosecutor in *Stockwell* were even more precipitate and unwarranted. Here no information was filed. On the very day that the magistrate, Judge Bennett, entered his decision and commitment order, the prosecutor approached District Judge Hargraves ex parte, and on the strength of a motion stating only that his motion was in the interests of justice, and his oral statement that he "wished" to start anew, obtained Judge Hargraves' signature to an order dismissing the felony charges against Stockwell.

In *Stockwell's* case the commitment, the dismissal, the refiling, and the habeas corpus hearing all took place within a matter of days. The strong position taken by Judge Hargraves at the habeas hearing against the prosecutorial practice which he had admittedly "accommodated," undoubtedly served to assuage a mighty wound to the integrity of Judge Bennett's court. In *Rufener*, however, the inroad upon the integrity of an examining magistrate was more devastating, and without any later compensating remarks by the district judge. Here the review of the district court's dismissal and the subsequent refiling of the identical charges first came up not before the district judge who had granted the prosecutor's desires, but before another magistrate of the same district. Whereas Judge Hargraves in *Stockwell* was in a good position to pass upon what had happened, including his own participation, Judge Shaud in *Rufener* was less favorably postured. Faced with a record which showed only that a district judge had dismissed the action, Judge Shaud was not in any position to sit in appellate review on that dismissal. Judge Shaud perceived that the only question upon which he could rule was whether or not he had jurisdiction. But, in order to obtain district court review of the highly irregular proceedings, Judge Shaud did stipulate to the record so that the issues involved could be laid before the district court on petition for a writ of prohibition. Unfortunately, Judge Bellwood did not go into the proposition that there were certain statutory requirements which must be fulfilled in order to dismiss pending felony informations, indictments or actions.

The matter is of extreme importance. A case of more lasting effect has not recently been before the Court. In the *Rufener* cases we were advised at oral argument that a second preliminary hearing has in fact since taken place, and that Judge Shaud, too, found that the evidence could not support a charge of first degree murder. We were also informed that due to the attendant publicity, it had been necessary to change venue from Minidoka County all the way north to Shoshone County. The result has obviously been additional expense to the State, and additional expense and inconvenience to the Rufeners, who were deprived of their right to a trial in the county where the alleged crimes took place. In *Stockwell*, the defendant has now seen over two years go by without so much as a preliminary hearing on the second complaint against him, notwithstanding his constitutional and statutory right to a speedy trial. I.C. § 19–3501; *Schrom v. Cramer*, 76 Idaho 1, 275 P.2d 979 (1954).

## I. WHY THE APPEAL IN *STOCKWELL* SHOULD BE DISMISSED.

This appeal should have been dismissed *instanter* the moment this Court discovered from the record that, contrary to the assertion in the State's brief, the second criminal complaint against Stockwell had not been dismissed.[1] Counsel for the State originally caught the Court's attention in this case by misstatement in his brief that an order had been entered granting a defendant's motion to dismiss the second criminal complaint:

"Before the second preliminary hearing could be held the Defendant filed a petition for a writ of habeas corpus alleging that his restraint was unlawful because the second filing was contrary to the rules of criminal procedure and in violation of the due process clauses of the state and federal constitutions. *He also*

*filed a motion to dismiss the new complaint with prejudice.* (Emphasis added.)

Even the majority admits that no such motion was made by defendant. Nor is there any recognized procedure for making such a motion *in district court* against a second criminal complaint pending before a magistrate and awaiting a preliminary hearing. It is elementary that a district court would lack jurisdiction to dismiss a complaint which is pending before a magistrate in a magistrate's court. *Claghorn v. Brown*, 505 P.2d 998 (Okla.Crim.App.1973).

It necessarily follows that the second criminal complaint against the defendant, charging him with second degree murder, is and has been pending since the 30th day of October, 1975. The State needed no decision from this Court in order to proceed against defendant on the pending second degree murder complaint. Yet that is the entire thrust of its appeal. Like a modern-day Don Quixote, counsel for the State has ridden into this Court tilting at a non-existent order, when there was no reason why the State could not have proceeded into the less fantasied combat of a preliminary hearing which, after all, by the rules of procedure is required to be held within 20 days. The Court, determined to play Sancho Panza to the State's Quixote, compounds the absurdity by invoking its "plenary power" so that "the second criminal complaint, which is still pending [may be] freed from the [non-existent] constraints of the district court's *habeas corpus* order."

Why not dismiss the appeal? We have before us nothing to consider, unless it be whether the defendant, now out of custody for over two years, should or should not have been released. An insurmountable obstacle to our making a competent judicial review of *that* question is the sorry state of the record with which we are furnished by the state. We have no pleadings. We *do*

---

1. That the second criminal complaint remains standing is not seriously in dispute. The majority opinion admits that the State "apparently misunderstood" the portion of the district judge's order which it interpreted as a dismissal of the second criminal complaint. The majority's admission that the second criminal complaint was *not* dismissed is, of course, inconsistent with its statement that if the district judge's order "is considered an order dismissing the second criminal complaint, it is probably analogous to dismissal on demurrer and appealable under I.C. § 19–2804(1)."

have the Petition for the issuance of the Writ, wherein defendant alleges his incarceration and presents the history of his case. But we see no Writ. We do not know to whom it issued, or upon whom it was served. Of greater importance, we do not have the Return to the Writ, nor the Answer to the Return. It is the return which is absolutely essential, for, in habeas corpus proceedings, the return takes the place of the complaint and issue is drawn on the return and the answer to the return. These papers constitute the pleadings in a habeas proceeding. I.C. § 19–4212.

An appellate court does not sit to guess what the return may have stated. Nor are we to presume error on the part of a district court. Quite the contrary, the presumption is that the district court acted without error. That the burden of establishing error is with the appellant is a precept of this and all other jurisdictions.[2] Seven different grounds for discharging a prisoner in custody are found in I.C. § 19–4215, and Judge Hargraves would have been justified in finding several of them applicable.[3] Or, equally likely, the release from custody may have been simply a discretionary "o.r." release under I.C. § 19–4219, with the district court concluding that such a disposi-

tion was just under all the circumstances of this case.

While it is true that the order of Judge Hargraves released the defendant from jail, it also appears that defendant was on the verge of making bond. Release of the defendant, by one means or another, could not affect the State's right to prosecute. Judge Hargraves simply ordered the release of the defendant from custody. He did so because he concluded that defendant's rights were being impinged upon. Here was a defendant first incarcerated under a $50,000 bond awaiting his preliminary hearing on a charge of second degree murder. At the preliminary hearing, the committing magistrate bound him over on a charge of voluntary manslaughter and accordingly reduced the bond to $15,000, an amount defendant was able to meet. The prosecutor, after being cautioned by the district court on the wisdom of dismissing the action, nevertheless had the action totally dismissed. Defendant was rearrested and bond was again set at a prohibitive $50,000. Under such circumstances, it ill behooves this Court to hold that Judge Hargraves incorrectly released the defendant from custody.

I conclude that this appeal should be dismissed simply because the legislature has

**2.** The Court today continues further down the path it so recently traversed in *State v. Lopez*, 98 Idaho 581, 570 P.2d 259 (1977). In that case it was *the defendant* who left the record behind and thereby succeeded in convincing a majority of this Court that Idaho's prostitution statute was vague-as-applied (since we did not know how it had been applied). Today it is *the State* that has chosen to leave the record behind and emerges successful as a result of the Court's willingness to assume that the missing record, if present, would support the State's position. The only principle I can decipher to reconcile the holdings of these two cases is that this Court does not discriminate between the State and the defendant: whichever party has lost below will find this Court predisposed in its favor if only it omits from the record all documents which support the adverse decisions below. For the reasons stated in my dissent, in *Lopez*, I continue to assert that this practice violates every known standard of appellate review.

**3.** "19–4215. Grounds for discharge.—If it appears on the return of the writ that the prisoner is in custody by virtue of process from

any court of this state, or judge or officer thereof, such prisoner may be discharged in any of the following cases, subject to the restrictions of the last section:

1. When the jurisdiction of such court or officer has been exceeded.
2. When the imprisonment was at first lawful, yet by some act, omission or event which has taken place afterward, the party has become entitled to a discharge.
3. When the process is defective in some matter of substance required by law, rendering such process void.
4. When the process, though in proper form, has been issued in a case not allowed by law.
5. When the person having the custody of the prisoner is not the person allowed by law to detain him.
6. Where the process is not authorized by any order, judgment or decree of any court, nor by any provision of law.
7. Where a party has been committed on a criminal charge without reasonable or probable cause."

not seen fit to allow an appeal by the State from an adverse determination made by a district court in a habeas corpus proceeding. The majority, in the last analysis, admits that the State is here appealing a non-appealable order but runs for cover under its unbridled authority "to review any decision of the district court, even if the party bringing the appeal has no statutory right to appeal the decision." Such an approach is particularly ironic in face of today's majority decision in the companion case of *Rufener*. In *Stockwell*, the majority invokes a so-called "plenary power" to hear the State's appeal from an admittedly non-appealable order and to rule upon issues which formed no part of the matter before the district court. In *Rufener*, where those issues are properly before this Court, the appeal is dismissed because a "writ of prohibition"—the remedy which is recognized by all other state courts as appropriate under the circumstances—will not lie in cases of this sort! If the State, the public defenders, the magistrates and district judges of Idaho, and the entire state bar are confused by such appellate practice, I can offer them no solace, for I must confess to being equally confused.

However, there should be no confusion about the fact that the majority's ruling on the merits of this case makes bad law—law that should stand for very little, and for not very long. The majority seems completely oblivious to section 13 of article 1 of the Bill of Rights of our Idaho Constitution, which guarantees due process of law to every Idaho citizen accused of a crime. It makes no mention of *State v. McGreevey*, 17 Idaho 453, 105 P. 1047 (1909), which is the very heart of defendant's brief before this Court. Thereby, it totally ignores *McGreevey's* thorough discussion of article 1, section 8 of the Idaho Constitution which so carefully distinguishes the function of the magistrate from that of the prosecutor. It equally ignores the plain provisions of I.C. § 19–1306 and § 19–3504 which effectuate this constitutional provision. These most serious and unwarranted assaults upon the Constitution and statutes of the State of Idaho are made in the name of providing a remedy for prosecuting attorneys who "decide" that a magistrate has erred in binding over a defendant to answer on a charge which is less than that which the prosecutor had brought. The Court seems to little realize that in giving this remedy to a prosecutor, a corresponding right is being taken from the defendant, and a corresponding attack is being made upon the integrity of this State's magistrates. I am compelled to set forth the manner in which the Court has erred.

## II. THE CONSTITUTIONAL FRAMEWORK IN IDAHO.

Among the rights afforded a person accused of a crime in Idaho is that guaranteed by the Idaho Constitution, article 1, § 8, which states that no person shall be held to answer for a felony unless by grand jury indictment, "or on information of the public prosecutor, *after a commitment by a magistrate*." (Emphasis added.) The proceedings of the Idaho Constitutional Convention show that this language was carefully chosen. The framers wanted the probable cause determination to be in the hands of a neutral and detached magistrate—*not* in the hands of the prosecuting attorney. As narrated by this Court in *State v. McGreevey*, 17 Idaho 453, 105 P. 1047 (1909), a heated debate arose at the Constitutional Convention because, as originally drafted in committee, the proposed Idaho Bill of Rights would have "authorized prosecutions on information without any previous preliminary examination or commitment." The upshot of the debate was that Mr. Claggett, the president of the Constitutional Convention, offered an amendment inserting the words "after a commitment by a magistrate" immediately following the word "prosecutor." The amendment was adopted and, 20 years later, was authoritatively interpreted by this Court as follows:

"... It was undoubtedly the intention of the constitutional convention, when inserting the clause, 'after a commitment by a magistrate,' in sec. 8 of the Bill of Rights, to prohibit the trial of any person for a felony or other offenses, not

cognizable by a probate or justice court, until after he had been accorded a preliminary examination and been committed to answer therefor by the committing magistrate. It was intended by this prohibition to accord every accused person a hearing before a committing magistrate on the particular offense for which he was subsequently to be tried on information of the public prosecutor. It was likewise intended that the 'probable cause' for informing against the defendant and putting him on trial in the district court should first be found by the magistrate." 17 Idaho at 463–64, 105 P. at 1050.

Our Bill of Rights, therefore, protects every Idaho citizen by carefully delineating the separate powers of the executive and judicial branches of government. To the prosecutor falls the initial decision as to whether or not a person should be prosecuted and, if so, on what charges. But once the complaint is filed, prosecutorial discretion is at an end. "When the decision to prosecute has been made, the process which leads to acquittal or to sentencing is fundamentally judicial in nature." *People v. Tenorio*, 3 Cal.3d 89, 94, 89 Cal.Rptr. 249, 473 P.2d 993, 996 (1970).

Idaho statutes carry out the constitutional intent. I.C. § 19–804 provides that at the preliminary examination it shall be the duty of the magistrate to determine whether or not a public offense has been committed. I.C. § 19–815 states that the magistrate, after hearing the evidence, shall enter an order holding the defendant to answer, provided the magistrate finds that a public offense has been committed and that there is probable or sufficient cause to believe the defendant guilty thereof. The language in I.C. § 19–815, which presents the options and the form to be used make it clear that the magistrate can find the commission of a public offense other than the one charged in the prosecutor's complaint. Once the magistrate's determination has been made, the prosecutor's sole function is to prepare and file the information against the accused in accordance with the magistrate's commitment order. I.C. § 19–1302. This is a

purely clerical and ministerial act, the same as if the prosecutor were preparing an indictment for the grand jury:

> " 'There is thus neither in the constitution nor in the laws enacted in furtherance of it the slightest vestige of judicial, discretionary, or appellate power given to the district attorney in controlling the action of the committing magistrate. His functions are ministerial purely.' " (Quoting from *People v. Nogiri*, 142 Cal. 596, 76 P. 490, 491 (1904).) *State v. McGreevey*, 17 Idaho at 461, 105 P. at 1049.

By ignoring the separation of powers so painstakingly constructed in the Idaho Bill of Rights and so clearly effectuated by Idaho statutes, the majority opinion today undermines the role of the magistrate at the preliminary hearing, condones a flagrant example of prosecutorial overreaching, creates an improper standard of district court review and tramples upon the constitutional and statutory rights of Idaho citizens. It is to these issues that I now turn.

III.  WHAT IS THE ROLE OF A MAGISTRATE AT A PRELIMINARY HEARING?

What is the precise role a magistrate must play at a preliminary hearing so as to honor the intention of the Idaho Bill of Rights? The question is at the very heart of today's two cases. The majority states as the very first question before the Court on appeal: "Whether a magistrate in a preliminary hearing may reduce the charge in a complaint when the evidence presented in a preliminary hearing is capable of sustaining inferences supporting the charge in the complaint." Indeed, this *is* the central question before the Court: Is the magistrate a judge whose decisions are entitled to a presumption of correctness, or is he a eunuch whose decisions are subject to being overturned by the "desire," "wish," or whim of the prosecuting attorney? Not surprisingly, the majority never answers the very question which it invoked its "plenary power" in order to address. The reason, of course, is that no law could be found to support its emasculation of the role of the magistrate in Idaho.

The magistrate's function at the preliminary hearing parallels that of the grand jury, whose task it is "to find an indictment when all the evidence before them, taken together, if unexplained or uncontradicted, would, in their judgment, warrant a conviction by a trial jury." I.C. § 19–1107. In *their* judgment, not that of the prosecutor. And in reaching that judgment, *"it is their duty to weigh all the evidence* submitted to them, and when they have reason to believe that other evidence within their reach will explain away the charge, they should order such evidence to be produced." (Emphasis added.) I.C. § 19–1106.[4]

That a magistrate, like a grand jury, has the right to *weigh* the evidence presented at the preliminary hearing and, if he sees fit, to bind the defendant over on a lesser charge than that brought by the prosecution, has always been understood to be the law in Idaho. In *State v. McGreevey, supra,* the Idaho Supreme Court quoted approvingly from an early Michigan opinion interpreting a statutory provision similar to our own constitutional provision:

" 'The clear evident intent of this statute was that the magistrate should exercise his best judgment in the matter; that he should from the testimony determine whether the crime charged in the warrant had been committed; or *where, as in this case, the offense charged includes one or more of lesser degree, the magistrate should determine which offense, if any, had been committed,* so that the accused might not be placed upon trial in the circuit to answer to a charge different or greater than the one on which he had been examined, and to answer which he had been held for trial." (Quoting from *Yaner v. People,* 34 Mich. 286, 105 P. 1047, 1048.) (Emphasis added.) 17 Idaho at 459.

And in *McGreevey* the Court stated for itself:

"It is also true that a preliminary examination on the charge of murder necessarily includes all the degrees of murder and manslaughter as well. An examination for the greater offense would include the lesser offenses which are necessarily and as a matter of law included within the offense named and charged. So *in this case the examination on the charge of murder included the charge of manslaughter, and it was within the power of the magistrate to hold the defendant for manslaughter,* but it was not within the power or authority of the prosecutor to file an information under that commitment for a higher or different offense than that for which he was committed." (Emphasis added.) 17 Idaho at 464–65, 105 P. at 1050.

In *McGreevey,* the prosecutor was a bit less subtle than in the present case. There, the prosecutor simply ignored the magistrate's commitment order (binding the defendant over on a charge of manslaughter) and filed an information charging murder. Here, the prosecutor rejected the decision of the magistrate and, with a mere dial of his telephone, obtained the dismissal of the commitment order, refiled a new and identical criminal complaint for second degree murder, and had Stockwell rearrested. The prosecutor's conduct here, which even the majority recognizes as a transparent "attempt to circumvent the ruling of the magistrate," has proved more effective than in *McGreevey* only because the prosecutor in that case found a more constitutionally-oriented Court unwilling to countenance his irregular conduct.

It should be noted that Idaho is not alone in holding that a magistrate at a preliminary hearing is empowered to weigh all evidence and, if he so decides, to bind the defendant over on a lesser charge than that brought by the prosecutor. The same role has been urged by the drafters of the Model Code of Pre-Arraignment Procedure and

4. If one were to accept the position of the majority, a prosecutor would also be at liberty to overthrow the probable cause finding of a grand jury. I doubt seriously that any one would urge that a prosecutor could refuse a grand jury's direction to prepare an indictment or could convince a district judge to dismiss such an indictment ex parte and without any showing whatsoever.

adopted by the American Law Institute in 1975. Once the magistrate has made his determination, he may not be second-guessed by a prosecutor except in the case of a plain abuse of discretion. *See, Esteybar v. Municipal Court for Long Beach Jud. Dist.*, 5 Cal.3d 119, 95 Cal.Rptr. 524, 485 P.2d 1140 (1971); *Myers v. Commonwealth*, 298 N.E.2d 819 (Mass.1973).

## IV. OPTIONS AVAILABLE TO THE PROSECUTOR.

Once an accused has been bound over for trial on a specific charge, an Idaho prosecutor's options are strictly limited. *McGreevey* makes it clear that the prosecutor can not ignore the magistrate's order committing Stockwell to answer for the offense of voluntary manslaughter and file an information for the offense of second degree murder. Neither can he simply drop the case since the prosecutorial right of *nolle prosequi* has been done away with in Idaho:

> "19–3505. *Nolle prosequi abolished.*— The entry of a nolle prosequi is abolished, *and neither the attorney-general nor the prosecuting attorney can discontinue or abandon a prosecution for a public offense except as provided in the last section.*" (Emphasis added.)

The question therefore arises: When, and under what circumstances, may a disappointed prosecutor challenge the sufficiency of the evidence to support the magistrate's commitment order? The majority fears a lack of symmetry in the appeals process because such a right belongs to the defendant by virtue of the recently enacted I.C. § 19–815A.[5] *See State v. O'Mealey*, 95 Idaho 202, 506 P.2d 99 (1973). It should be noted, however, that a *defendant* has always had the same right under the habeas corpus provisions of the Criminal Procedure Act of 1864, which provisions are now codified as I.C. § 19–4215.[6]

In *Stockwell* and in *Rufener*, it is now *the State* who would challenge what it deems to be magistrate error in binding over the defendant on a lesser charge than that brought by the prosecutor. Yet, in all of Idaho's history, both as a State and earlier as a territory, there has not been any statutory provision which grants the State the full panoply of rights which are provided to an accused under I.C. §§ 19–815A and 19–4215(7). When the time comes that the State is the accused, it will be time enough to afford such protections to the State.

Surely, no such right can be created under the guise of this Court's rule-making powers. The principles enunciated by Justice Bakes and myself in *State v. Creech*, —— Idaho ——, —— P.2d ——, 1977, are applicable here. This Court cannot by its own *fiat*, legislate in an area where fundamental and constitutional rights are at stake. Redress of what the majority perceives as an imbalance between the rights of the accused and of the prosecution, would have to come from the legislature. I sound the alarm now, loudly and clearly, to the bench and bar alike, to the legislature and to the people of Idaho that Titles 18 and 19 form the backbone of the criminal justice system of this state. They must not be allowed to be repealed on the mere say-so of some Court-

---

**5.** "19–815A. Challenging sufficiency of evidence of preliminary examination.—A defendant once held to answer to a criminal charge under this chapter may challenge the sufficiency of evidence educed at the preliminary examination by a motion to dismiss the commitment, signed by the magistrate, or the information filed by the prosecuting attorney. Such motion to dismiss shall be heard by a district judge.

"If the district judge finds that the magistrate has held the defendant to answer without reasonable or probable cause to believe that the defendant has committed the crime for which he was held to answer, or finds that no public offense has been committed, he shall dismiss the complaint, commitment or information and order the defendant discharged."

**6.** It was under this section of the code that the district court reviewed the evidence submitted to the examining magistrate in *Carey v. State*, 91 Idaho 706, 429 P.2d 836. The accused there admitted that he could be charged with a felony, but denied that the record could "support a preliminary finding of sufficient evidence to hold him to answer a charge of deliberate and premeditated murder." 91 Idaho at 709, 429 P.2d at 839.

The trial court, and this Court on appeal, held that "*the magistrate's discretion should not be disturbed except in a clear case of abuse thereof.*" *Ibid.* (Emphasis added.)

appointed committee and replaced with that committee's preferred set of rules.

It is my conviction that Title 19, *properly applied*, is fully adequate to meet the State's needs in those rare instances where going to trial on the charges stated in the magistrate's commitment order would clearly not be in furtherance of justice. For example, a more sophisticated laboratory analysis might reveal a drug offense where none had previously been expected, *People v. Ayala*, 34 Cal.App.3d 360, 109 Cal.Rptr. 193 (1973); or the State's key witness might be absent from the first preliminary hearing but later become available, *Arnold v. Williams*, 222 Cal.App.2d 193, 35 Cal.Rptr. 35 (1963); or the magistrate might make a clear error of law in holding that an accused did not "escape," and later discover that there was, indeed, a valid commitment order holding him in custody, *Chase v. State*, 517 P.2d 1142 (Okla.Crim. App.1973); or the prosecutor might want to bring a charge of murder where the victim dies after the magistrate has bound the accused over on charges of assault. I.C. § 19–1717.

The procedure which a prosecutor must follow in such cases is prescribed by I.C. § 19–3504:

"19–3504. Dismissal on motion of court or prosecuting attorney.—The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action or indictment to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes."

This statute is recognized by Idaho Criminal Rule 48(b):

"(b) By Court. The court may dismiss the criminal action:

(1) If there is unnecessary delay in presenting the charge to a grand jury or if an information is not filed within the period prescribed in Rule 7 of these rules, or if there is an unnecessary delay in bringing the defendant to trial.

(2) If, for any other reason, it concludes that such dismissal will serve the ends of justice and the effective administration of the court's business.

(3) An order for the dismissal of the action, as provided by Rule 48(b), is a bar to any other prosecution for the same offense if it is a misdemeanor; but it is not a bar if the offense is a felony."

When a prosecutor moves the court for a dismissal under I.C. 19–3504, his motion obviously must set forth the reasons which he anticipates the court will find to exist as a predicate for granting the motion. Here no reasons were set forth by the prosecutor. The Motion to Dismiss stated only:

"Comes now, the State of Idaho, by and through Garth S. Pincock, Prosecuting Attorney for Bannock County, Idaho, and moves the Court to dismiss the above entitled action without prejudice in the interests of justice."

Such a bare-bone motion was totally insufficient to give a district judge a record which would enable him to make a judicial determination.

Nor would it have helped the prosecutor to urge, as the State now does in his behalf on appeal, that he was proceeding under authority of I.C.R. 48(a). Rule 48(a) for what it may be worth, purports to give a prosecutor by leave of court, the right to dismiss a complaint, an indictment, or an information. Here there was no indictment or information. The complaint, which had been before Judge Bennett was superseded by an Order of Commitment holding the defendant to answer in district court. The drafters quite apparently had in mind that Rule 48(a), a supposed prosecutor's dismissal, was to be a rule version of the statute, I.C. § 19–1306, which requires a prosecutor to set forth in writing his reasons for refusing to file an information and for seeking a dismissal:

"The provisions of Rule 48 should be read in conjunction with Section 19–1306, which permits the prosecuting attorney, even after a preliminary examination, to make a determination that an information ought not to be filed, *in which case he is required to make, subscribe and file with the clerk of the court a statement in writing containing his reasons, in fact*

*and in law*, for not filing an information in such case, . . . ." (Emphasis added.) Comment, Rule 48.

The importance of such a statement of reasons must not be minimized. The defendant has just been subjected to a preliminary hearing and has a right to rely on its outcome. The people have a right to see that a prosecutor prosecutes a case in which a magistrate has ordered that a defendant be held to answer for the commission of a felony. As noted by the drafters of the Criminal Rules, these values are safeguarded by close district court scrutiny of the prosecutor's filed statement:

"The section [I.C. § 19–1306] also provides, however, that the court may examine such statement and if the court is not satisfied with the statement, the prosecuting attorney may be directed by the court to file the proper information and bring the case to trial." *Ibid.*

The order of dismissal in *Stockwell's* case without question was a dismissal by the court, and not a prosecutor's dismissal. As pointed out, there was nothing in district court the prosecutor could dismiss; no complaint, no indictment, no information. It was *the action* in district court that was dismissed, and it was the dismissal of *the action* for which the prosecutor moved, and for which he could move both within the language of I.C. § 19–3504 and Rule 48(b).

Fatally, the prosecutor failed entirely to support his motion. It was founded on an oral "wish," conveyed ex parte to Judge Hargraves, and premised upon the wholly insufficient and conclusory statement in the motion that it was made "in the interests of justice." Without supporting reasons being given for the motion, no judicial determination could be made as to whether the motion to dismiss was in the interest of justice. It follows that the district judge was entirely without and in excess of his jurisdiction in entering an order dismissing the proceedings.

## V. THE DISTRICT COURT'S ROLE AT A HEARING TO DISMISS.

As stated above, the prosecutor has no right, on his own, to refuse to file an information or to dismiss an information once it has been filed. He may do so only if he states in writing reasons in fact and in law, sufficient to convince the district court that dismissal actually is in the furtherance of justice. This is not the only prerequisite to the grant of a dismissal. (1) In district court due process requires notice of hearing and an opportunity to be heard on such a motion. (2) The standard of review in district court is addressed to the question of whether or not the magistrate has grossly abused his discretion. (3) If the district court grants the motion, the statute requires that an order be entered upon the minutes setting forth the reasons. Thus all may know upon what basis a court would halt and dismiss the prosecution of a felony. In *Stockwell* and in *Rufener*, the respective district courts violated all three of these circumstances—each and every one of which is a condition precedent to the entry of a valid order of dismissal.

### 1. *A Contested Dismissal Requires a Hearing.*

The majority admits that the entire habeas hearing was "concerned primarily with the propriety of the prosecuting attorney's ex parte dismissal of the first criminal proceeding." Unfortunately, the majority never itself addresses the question. This is not surprising since, by its own admission, the majority is invoking its "plenary power" only to address those recurring questions "which must be resolved to prevent future criminal proceedings from being improperly dismissed or reduced by erroneous rulings of the magistrate or district judge"—not to address those recurring questions which would have to be resolved so as to safeguard the constitutional rights of Idaho citizens and the integrity of its magistrates. In yet another sense, it is not surprising that the majority fails to address the ex parte dismissals which occurred in *Stockwell* and in *Rufener* because, again, it could find no law or policy reasons to support its endorsement of such a practice.

A defendant has a right to rely upon the outcome of a preliminary hearing. In fact, the Court in *Carey, supra*, stated the defendant's right in terms of a guarantee:

"The Idaho Constitution guarantees an accused's right to a preliminary hearing before a magistrate and, afterwards, to be prosecuted by information or the presentment on indictment of a grand jury. Idaho Const. art. 1, § 8." 91 Idaho at 710.

The time and effort of counsel and the magistrate at the preliminary hearing become worthless where, as happened in both of these cases, a disgruntled prosecutor can casually "side-door" a district judge, and have the determination of the magistrate thrown out without there ever having been a judicial hearing. It is so fundamental as to be self-evident that when a prosecutor's attempted dismissal would undoubtedly be contested by the defendant who has the guarantee of *Carey, supra*, a district court must not hear the dismissal motion ex parte. A district court, if in doubt, can easily resolve the matter by asking defense counsel if an opportunity to be heard is desired.

In the case of *State v. Burri*, 550 P.2d 507, 513 (1976), the Washington Supreme Court noted its own criminal rule on the subject which states: "The court on its own motion in the furtherance of justice, *after notice and hearing*, may dismiss any criminal prosecution and shall set forth its reasons in a written order." (Emphasis added.) Wash.Cr.R. 8.3(b). Though the Idaho Criminal Rules and the criminal code do not include similar language as to notice and hearing, notice and an opportunity to be heard are fundamental due process rights of the accused when the prosecutor seeks district court dismissal of a magistrate's commitment order in an effort to refile a criminal complaint for a higher offense.

In California, in the same situation under the same statute, it has been held that the prosecuting attorney *must* be given notice and an opportunity to attend proceedings at which a municipal court, on its own motion, is to decide whether a misdemeanor complaint will be dismissed under California Penal Code, section 1385 [Idaho § 19–3504]. The reasons why *the prosecutor* must be given notice and the opportunity to be heard are:

"First. It will enable the trial judge to make a more informed decision, which every judge aspires to do, by presenting an opportunity to inform himself of the total picture. . . . A defendant would be less likely to make untrue representations, if the prosecutor were present. . . .

"Second. Even in the absence of a statutory requirement of notice, if the rights of an adverse party are likely to be affected, requirement of a notice of motion is a basic concept to be observed, absent a legal showing of an emergency justifying its dispensation. . . . In certain cases, just a telephone call to the prosecutor with a reasonable opportunity to appear might be adequate. But some kind of notice is a requisite and the onus thereof is not unreasonable.

"Third. By the observation of our basic notion that a criminal proceeding is basically adversary in nature, the general respect of the public for courts and the judicial process, we feel, will be promoted. Courts and judicial officers must at all times not only be fair in fact, but also be diligent in preserving the appearance of fairness as well. . . .

"Finally, we feel that by requiring that *the prosecutor be given notice and opportunity to be present, it will ease some of the unfair and improper pressures sometimes placed upon judges* . . . ." *People v. Gonzales*, 235 Cal.App.2d Supp. 887, 46 Cal.Rptr. 301, 303–304 (1965).

The reasons stated above apply with equal, if not greater, force in the case of *a defendant* whose commitment as found by the magistrate is sought to be dismissed. *See also, State v. Fernie*, 129 Vt. 605, 285 A.2d 726, 727, (Vermont 1971).

In short, on a prosecutor's motion to dismiss, the defendant has a right to notice and the opportunity to be heard. This is the logical conclusion to be drawn from

818

Idaho's tradition of protecting the accused by interposing a detached judicial official between him and the prosecutor. The ex parte dismissals exacted of the district court by overzealous prosecutors in these two cases, and today endorsed by the majority, violate that tradition. On this basis alone, I would find these ex parte dismissals fatally defective.

## 2. *The Standard of Review in District Court.*

The majority holds that "the prosecutor had cause to bring a second criminal complaint against *Stockwell* based upon his good faith belief that the magistrate erred" and his self-serving statement that he was not magistrate-shopping. It can be conceded that many are the Idaho prosecutors who have entertained the "good faith" belief that a magistrate has erred in reducing a criminal complaint from murder to manslaughter. It might equally be noted that many are the prosecutors who have entertained the good faith belief that a district court has erred in granting a defendant's motion for directed verdict or in meting out unduly lenient sentences. But while good faith on the part of the prosecutor is necessary,[7] it by no means follows that that high quality alone justifies a prosecutor's motion to overturn the magistrate's determination.

On the contrary, the standard which has long governed district court review of magistrate commitment orders in Idaho reads as follows:

"A wide discretion must be given to a committing magistrate in binding over, and in order to vacate and nullify his action in this regard, it must be shown that such action was a *plain* case of abuse of discretion." (Emphasis added.) *State v. Layman*, 22 Idaho 387, 390, 125 P. 1042 (1922).

*And see, State v. O'Mealey, supra*, 95 Idaho at 204; *In re Levy*, 8 Idaho 53, 66 P. 806 (1901).

In short, the Idaho magistrate is given wide discretion in his decision to bind over; *his* is the determination as to what offense has been committed. The prosecutor who claims an abuse of magistrate discretion must state in writing his reasons for challenging that decision; *his* is the burden of showing that there has been a plain abuse of discretion. The prosecutor's reasons, along with the record which was before the magistrate, form the basis of district court review. District court review, under I.C. § 19-3504, is limited to a determination as to whether or not the magistrate has plainly abused his discretion.

The same standard of review has been elaborated in detail by the Michigan Supreme Court in the recent, well-reasoned case of *Genesee County Prosecutor v. Genesee Circuit Judge*, 391 Mich. 115, 215 N.W.2d 145 (1974). Michigan retains a prosecutorial right of *nolle prosequi*, and with that context in mind, the state's highest court has instructed its district courts that they must review,

". . . the action of the magistrate and prosecuting attorney on the record— the record made before the magistrate at the preliminary examination, and the prosecutor's statement of reasons and 'the evidence filed in the case.' Such review is a judicial review, searching the record to determine whether the magistrate's or prosecutor's decision is in accord with the law, facts and reasons of the matter. . . .

"[A district judge] . . . may reverse a magistrate's decision only for abuse of discretion. He may not properly substitute his judgment for that of the magistrate or prosecuting attorney as if he were reviewing the magistrate's decision *de novo* or acting in a supervisory capacity with respect to the prosecuting attorney. He may reverse or revise their decisions only if it appears on the record that they have abused the power confided in them." 215 N.W.2d at 147.

---

**7.** If a prosecutor were not in "good faith," he would either be "faithless" or in "bad faith." If a prosecutor were in "bad faith" in bringing about the nullification of a magistrate's order

that an accused be held to stand trial on a felony charge, such a prosecutor would be chargeable with obstruction of justice. I.C. § 18-705.

In this case, not only was this standard of review not met, but in essence there was no review at all. The magistrate's commitment order was filed at 2:00 o'clock p.m. on October 30, 1975, several hours after the preliminary hearing was held. Even before the order was filed, however, the prosecutor, together with a Pocatello police officer, went to the office of the district judge with a Motion to Dismiss. Judge Hargraves, as he later stated in the habeas action, expressed misgivings and asked if the prosecutor had legal authority to proceed in this manner. He suggested that the prosecutor research the matter and that if he then still wished the Order signed, he would be accommodated. Later that same afternoon, between 4:30 and 4:45, the prosecutor telephoned the court and said that he *did* want the Order signed and handed to the clerk for filing. This was done, the Order was filed at 5:02 p.m., and Stockwell was served with a new complaint charging him with second degree murder.

The prosecutor failed to make any showing to challenge the outcome of the proceedings in magistrate's court. Contrary to what the casual reader would glean from the majority's hindsight scrutiny of the preliminary hearing transcript, no record of the proceedings in magistrate court was given to Judge Hargraves. In fact no record was available. The "hearing," if such it could be called, was held in the absence of the only other party likely to give a balanced account of what had transpired. The district judge did not consider, let alone determine, whether the magistrate had abused his discretion because, as the record shows, it was not even alleged that the magistrate had abused his discretion. Indeed, the prosecutor himself stated that,

". . . after we had rested, I had asked the court for permission to reopen if he felt that additional evidence was necessary, and of course *it was within his discretion* to deny me that opportunity."

To grant a dismissal, under such circumstances, makes a nullity of the Idaho Constitutional protections. It justifies the cynicism of those members of the Constitutional Convention who predicted that the constitutional protections would come to naught because "with most magistrates it seems that the dictum of the district attorney is the end of the law." *State v. McGreevey, supra,* 17 Idaho at 458, 66 P. 806. Such conduct is unacceptable in magistrate court. It is even less acceptable on appeal in district court.

District court review in a case such as this must be under the statute; a dismissal should be granted only if the record shows a plain abuse of discretion on the part of the examining magistrate. Here, there was only the bare oral assertion by the prosecutor that "we had felt we had put on ample evidence to bind the defendant over as charged," and the request for permission to reopen in order to produce additional testimony. The district judge's evaluation of such a request, belatedly announced at the habeas corpus hearing, is the response he should have made at the earlier dismissal "hearing":

"A person charged with Murder in the Second Degree is, in the words of the southern sheriff, 'in a heap of trouble.' Homicide, in any form, is very serious business. This Court, at least, believes a prosecuting attorney, presenting evidence at a preliminary hearing involving homicide in any degree must go into court with a fully loaded gun. He is under a duty to those he represents to present the best and most persuasive evidence he has. He may not withhold evidence in the vain hope the magistrate may guess or through Divinity or extra-sensory perception know what additional evidence the prosecutor may have available. In accordance with the law the magistrate must make his finding based upon SUBSTANTIAL EVIDENCE; not upon speculation or conjecture."

A prosecutor, of course, is not obliged to show his whole case at the preliminary hearing. Neither can he be coy and withhold evidence, in hope of later tactical advantage, if such evidence is necessary to convince the magistrate that a suspect should be bound over on the highest offense charged. *See, Jones v. State,* 481 P.2d 169

(Okla.Crim.App.1971); *Stone v. Hope*, 488 P.2d 616 (Okla.Crim.App.1971). To allow a dismissal and refiling every time the prosecutor miscalculates the quantum of evidence needed to gain the desired commitment, as Judge Hargraves later ruled,

". . . would not only do violence to the due process rights of this Petitioner but would establish a very dangerous precedent which could adversely affect numerous other persons charged with crime. If the prosecutor could do this once, why not twice, ten times, or innumerable times? Conceivably a defendant could spend months in jail, not being able to make bond, and remaining always at the preliminary hearing stage with never a hope for an early trial on the merits of the case, unless the prosecutor happened upon a magistrate who would not 'have in mind doing something different than what [the prosecutor] wanted done.' *The criterion is not what the prosecutor wants done but rather what should be done by an impartial, neutral tribunal based upon substantial evidence.* The magistrate is not expected to be a rubber stamping puppet either for the prosecutor or for the defendant." (Emphasis added.)

Had the district judge used this criterion when dismissal was requested by the prosecutor, he would not have granted the motion to dismiss, and this case would long ago have ended in a plea, or gone to trial.

To his credit, Judge Hargraves tacitly admitted at the habeas proceeding that he had erred in granting an ex parte dismissal of the first action in violation of Stockwell's due process rights and in violation of his own obligation to accord "wide discretion" to the committing magistrate and to reverse that determination only when it was shown to be "a plain case of abuse of discretion." *State v. Layman, supra.* After such a candid admission by the district judge regarding the inadequacy of his own decision, it is strange indeed to find this Court

*sua sponte* shoring up that decision by references to a record which was not available to the district judge. Once it is demonstrated that the district court failed to make the review mandated by this state's constitution, statutes and case law, this Court's review should be at an end. Our task, after all, is to review the decision the district judge actually made, not one he might have made had he been presented with a proper motion and a full record.

### 3. The District Court Must State Its Reasons for Granting a Motion to Dismiss.

Contrary to what the reader might infer from the majority opinion, the district court in this case gave no reasons for granting the dismissal requested by the prosecuting attorney. Absolutely none. The court's ruling is entered on the prosecutor's motion to dismiss and reads simply: "It is so ordered." The minutes of the court, if any were kept of this ex parte request, have not been included in the record the State has brought to us on appeal.

The State argues that reasons need not be stated in the court minutes because the prosecutor was here proceeding under I.C.R. 48 which requires that the district court's reasons be stated only when a dismissal is granted over *the prosecutor's* objection.[8] In its brief before this Court, the State, in effect, argues that the passage of I.C.R. 48 has repealed the provisions of I.C. § 19–3504:

"Prior to the adoption of the Rules of Criminal Procedure, the Idaho statutes provided that a felony complaint might be dismissed either by the court or by the prosecuting attorney. There was a requirement that the reasons for dismissal be set forth in an order entered upon the minutes. *Idaho Code,* § 19–3504. Rule 48, which covers the same subject matter, provides that the prosecuting attorney

---

8. "Rule 48. Dismissal.—(a) By Prosecuting Attorney. The prosecuting attorney may by leave of court file a dismissal of a complaint, indictment or information.

. . . . .

"(c) Record. If the court over objection of the prosecuting attorney dismisses a complaint, indictment or information under this subsection, it shall state, on the record, its findings of fact and reasons for dismissal."

may, with leave of the court, file a dismissal of a complaint, indictment or information. Rule 48 does not require a statement of reasons in the order of dismissal unless the court dismisses an action on its own motion over objection of the prosecuting attorney, in which case the court is required to spread upon the record its findings and reasons for dismissal. Rule 48(c). The effect of this change is to eliminate the requirement of a formal statement of reasons if the prosecuting attorney files a motion to dismiss."

I am much saddened by the State's argument on this point and its apparent acceptance by the majority—who quote approvingly from I.C.R. 48 and hold I.C. § 19–3504 for naught. It is standard appellate practice in Idaho to interpret two statutes or a statute and a rule so as to save both, if that is at all possible. *State v. Jennings*, 95 Idaho 724, 726, 518 P.2d 1186 (1974). In the present case, where the rule addresses itself to one situation (dismissals over the objection of the prosecutor) and is silent about another (dismissals over the objection of the defendant), and where the statute is explicit on both, I see no reason for choosing between the two. The rule and the statute can be harmonized with no difficulty by giving effect to the clear requirements of both.

But the State's argument strikes more deeply and implies that the passage of I.C.R. 48 has somehow repealed I.C. § 19–3504. The State, in effect, is advocating the supremacy of a recent court rule of procedure over a substantive statutory provision which has been the law in this jurisdiction for well over 100 years. I am unable to ascertain how or by what authority a procedural rule could purport to change statutory substantive law—or, indeed, why a rule should be promulgated which is at best a poorly drafted repetition of the substantive law in this area. What is clear, however, is that the provisions of I.C.

§ 19–3504 are *substantive* and not merely procedural. In an area such as this, as Justice Bakes noted recently in *State v. Creech*, —— Idaho ——, —— P.2d —— (1977), one must not confuse "the procedure by which the Idaho courts conduct their business" with "the substantive law which governs the case."

An order dismissing a criminal action which does not state the reasons presents a very obvious violation of I.C. § 19–3504 which states:

"The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action or indictment to be dismissed. *The reasons of the dismissal must be set forth in an order entered upon the minutes.*" (Emphasis added.)

Although this Court has never construed the precise language of this statute, the California Supreme Court has just recently, en banc and unanimously, stated its view of the identical provision:

"Secondly, we note that the dismissal of counts I and II is manifestly invalid under section 1385 because of the court's failure to comply with the following provision of the statute: 'The *reasons* of the dismissal must be set forth in an order entered upon the minutes.' (Italics added; *see* fn. 6, *ante.*) It is settled law that this provision is mandatory and not merely directory. Recently in *People v. Superior Court (Howard)* (1968), 69 Cal.2d 491, 502–503, 72 Cal.Rptr. 330, 446 P.2d 138, while recognizing the broad right of a trial judge to dismiss in furtherance of justice, we adverted to the requirement that he 'must state his reasons in the minutes' and took pains to point out that '[i]f the reasons are not set forth in the minutes, the order dismissing may not be considered a dismissal under section 1385.'" [Citations omitted.] (Emphasis added.) *People v. Orin*, 120 Cal.Rptr. 65, 533 P.2d 193, 198 (1975).[9]

---

9. Justice Bakes remains unconvinced that *Orin* stands for the proposition that a district court order is invalid when "the record contains no minute entry setting out the reasons for the dismissal." I leave it to the reader to peruse the California case law. *See also, People v. Superior Court*, 69 Cal.2d 491, 72 Cal.Rptr. 330, 446 P.2d 138 (1968); *People v. Smith*, 53 Cal.

"Thus, it has been said: 'The statement of reasons is not merely directory, and neither trial nor appellate courts have authority to disregard the requirement. It is not enough that on review the reporter's transcript may show the trial court's motivation; the *minutes* must reflect the reason "so that all may know why this great power was exercised."' [Citation omitted.] The underlying purpose of this statutory requirement is 'to protect the public interest against improper or corrupt [fn. omitted] dismissals' and to impose a purposeful restraint upon the exercise of judicial power 'Lest magistral discretion sweep away the government of laws.'" [Citations omitted.] *Ibid.*, 533 P.2d at 197–98.

The Utah Supreme Court, interpreting statutory language identical to that of Idaho, has given the policy reasons for insisting that a district court state its reasons for granting a dismissal:

"Because of the nature of criminal proceedings, and because they are in the interests of and for the protection of the public there is a sound basis in public policy for requiring the judge who assumes the serious responsibility of dismissing a case to set forth his reasons for doing so in order that all may know what invokes the court's discretion and whether its action is justified.

"We conclude that the court erred in dismissing the seven cases in question. We therefore comply with the request in his memorandum submitted to this court: 'If I am wrong, kindly reverse me.' In conformity with this request, the order of dismissal is therefore 'kindly' reversed." *Salt Lake City v. Hanson, supra,* 425 P.2d at 775.

*And see,* the many cases cited therein to the same effect. Unless there is some reason, and I see none, why we should not follow the decision of our neighboring states' highest courts in construing statutes identical to ours, the district judge's failure to state his reasons in the court's minutes renders his dismissal order in this case invalid.

CONCLUSION.

It bears repeating that this appeal is from the grant of Stockwell's petition for writ of habeas corpus. Defendant had every right to complain about being jailed on a second criminal complaint when there had been no valid dismissal of the first action against him. The State, having invited and caused that error by its improper motion for dismissal, should not be able to take advantage of the invalid order it secured. The appeal in Stockwell's case should be dismissed for the reasons which have been stated above.

The real losers in the decision handed down by today's majority opinion are not the Rufeners, nor Stockwell, but the people of this state and their criminal justice system. For as long as I have been at the practice of law, and for 85 years before that, it has been the law in Idaho that *neither the Attorney General nor the prosecuting attorney can discontinue or abandon a prosecution for a public offense* (I.C. § 19–3505) *except in furtherance of justice, in which case the court must set forth the reasons for the dismissal to be entered upon the minutes.* (I.C. § 19–3504) To my dismay, the Court today supplants that substantive statutory provision with a new law of its own making, doing so under the guise of its right to make rules of procedure. At the same time, the Court tramples into the ground the constitutional provision interposing a neutral and detached magistrate between an accused and the prosecutor.

The Court's decision today is a gratuitous attack upon Idaho's magistrates whom our Bill of Rights, article 1, § 8, entrusts with the task of protecting Idaho citizens from the over-reaching of prosecutors, but whose interests in this case are "represented" by the Attorney General, the state's chief prosecutor! The impugning of magistrates' au-

App.3d 655, 126 Cal.Rptr. 195 (1975); *People v. McAlonan,* 22 Cal.App.3d 982, 99 Cal.Rptr. 733 (1972); *People v. Beasley,* 5 Cal.App.3d 617, 85 Cal.Rptr. 501 (1970). However, I am content to rest my argument not on California case law but on the clear and unequivocal language of the Idaho statute.

thority which inevitably flows from today's decision likewise is most unfortunate in an era of judicial reform in Idaho. When the Supreme Court chooses to invoke its rarely exercised "plenary power" so as to hear an appeal from a non-appealable order and then engages in what Justice Shepard characterizes as "blatant speculation" regarding what *might* have happened had the prosecutor followed proper procedure at the preliminary hearing and then overturns a magistrate's decision, the lesson will not be lost on this state's magistrates. The Court clearly gives its blessing to the type of structure needed to support "prosecutorial zeal that demands an obsequious judge and inevitable victory in every case." *People v. Uhlemann,* 9 Cal.3d 662, 108 Cal.Rptr. 657, 511 P.2d 609, 614 (1973).

Under such circumstances, I can only join with Justice Mosk of the California Supreme Court who was compelled to disavow the same outcome when that Court likewise gave its blessing to "a gross example of a prosecutor seeking to circumvent a judicial determination." As he remarked,

> "The majority add 'sound practical reason' for their conclusion: magistrates need not be members of the bar, and presumably some have limited knowledge of the law. Regrettably the final elimination of nonlawyer judges in California has been a painfully slow process. But the retention of a few judges of dubious qualification reflects upon the administration of justice, not upon the rights available to a defendant. . . . In any event no one questions the qualifications and experience of the legally trained magistrate in this case." *Ibid.* 511 P.2d at 619.

In Idaho, on the contrary, a healthier situation prevails. In one of our districts, all of the magistrates are members of the bar. So far as I know, in the other districts, most magistrates are attorneys and it is my understanding that attorney-magistrates preside at preliminary hearings in felony cases. Many of our magistrates have become district judges, and many more are qualified to do so.[10] I can see nothing—nothing whatever—which justifies the Court today in holding that the magistrates in these cases did not comprehend their function at a preliminary hearing and that their decisions deserve to be overturned at the mere "desire," or "wish" or whim of the county prosecutor.

---

10. Some of our lay magistrates, even prior to the judicial reform of 1971, were examining magistrates under the justice of the peace and probate court systems, and rendered excellent performance, and in accord with that envisioned by the framers of our Constitution. Others, new to the system, have all recently taken and passed a comprehensive course in criminal law procedures, with an especial emphasis on preliminary hearings.